**David N. SEDERQUIST, Jr., and Marilyn Sederquist, husband and wife; George A. Thatcher, and Georgia Thatcher, trustees of the Thatcher Trust, Plaintiffs,**

v.

**TAHOE REGIONAL PLANNING AGENCY, Defendant.**

**No. CV–R–84–295–ECR.**

United States District Court, D. Nevada.

Jan. 13, 1987.

Robert Damon Spitzer, Incline Village, Nev., for plaintiffs.

Heaton, Doescher & Owen, Carson City, Nev., and Susan E. Scholley, Zephyr Cove, Nev., for defendant.

## MEMORANDUM DECISION AND ORDER

EDWARD C. REED, Jr., Chief Judge.

Defendant, Tahoe Regional Planning Agency ("TRPA"), has moved for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. Plaintiffs, David N. and Marilyn Sederquist, moved for summary judgment on two of their three claims for relief.

## I

## BACKGROUND

In 1968, the states of California and Nevada entered an interstate agreement designed to insure conservation of resources and control of development in the Lake Tahoe Basin. That agreement, known as the Tahoe Regional Planning Compact ("1969 Compact"), became effective when it received the consent of Congress in December, 1969. Pub.L. No. 91–148, 83 Stat. 360 (1969).

The 1969 Compact created TRPA and charged TRPA with the duty to develop a regional plan for the Tahoe Basin within eighteen months of its formation. TRPA adopted a regional plan in December, 1971. Various implementing rules, regulations, and ordinances were adopted during the following years.

The 1969 Compact was "not the powerful anti-growth measure that some people ... wish[ed] it to be," *California Tahoe Regional Planning Agency v. Jennings*, 594 F.2d 181, 188–189 (9th Cir.1979), *cert. denied* 444 U.S. 864, 100 S.Ct. 133, 62 L.Ed 86 (1979). In 1980, California and Nevada extensively amended the interstate agreement. The amended Tahoe Regional Planning Compact ("1980 Compact") became effective on December 19, 1980, when Congress consented to the changes. Pub.L. No. 96–551, 94 Stat. 3233 (1980).

The 1980 Compact required TRPA to develop and establish "environmental threshold carrying capacities" for the Lake Tahoe Basin within eighteen months of the amended Compact's effective date. 1980 Compact, Articles I(b) and V(b). An environment threshold carrying capacity is an "environmental standard necessary to maintain a significant scenic, recreational, educational, scientific or natural value of the region or to maintain public health and safety within the region." 1980 Compact, Article II(i). Within one year of adoption of the environmental threshold carrying capacities, the Compact required TRPA to "amend the regional plan so that, at a minimum, the plan and all its elements ... achieves and maintains the adopted environmental threshold carrying capacities." 1980 Compact, Article V(c).

Further, the Compact provided that if an activity undertaken by an individual or a public agency "may substantially affect the land, water, air, space, or any other natural resources of the region," then such activity is a "project" for purposes of regional plan-

ning. 1980 Compact, Article II(h). Such an activity must be reviewed and approved by TRPA prior to development and construction. 1980 Compact, Article VI(b). The Compact permits TRPA to approve a project only if a detailed environmental impact statement indicates that it complies with the regional plan and any ordinances, rules, and regulations that implement the plan. 1980 Compact, Articles VII and VI(b). To insure this compliance, the Compact requires TRPA to "adopt ordinances prescribing specific written findings that the agency must make prior to approving any project in the region." 1980 Compact, Article V(g). The Compact instructs TRPA that these findings must "relate to environmental protection and ... insure that the project under review will not adversely affect implementation of of the regional plan and will not cause the adopted environmental threshold carrying capacities of the region to be exceeded." *Id.*

The Compact contemplates a phase-in of these project approval requirements over at least a thirty month time period. As noted earlier, the Compact allowed TRPA eighteen months to develop the environmental threshold carrying capacities, and one year thereafter to amend the regional plan. The Compact did not, however, specify a deadline for adoption of the V(g) ordinances. Instead, the Compact provided that until such ordinances are adopted, TRPA "may approve a project in the region only after making written findings ... that the project is consistent with the regional plan then in effect and with applicable plans, ordinances, regulations and standards of Federal and State agencies relating to the protection, maintenance and enhancement of environmental quality in the region." 1980 Compact, Article VI(b).

Much of this background information was adapted from *People of California v. Tahoe Regional Planning Agency*, 766 F.2d 1308 (9th Cir.1985).

## II

## FACTS

Plaintiffs own Lot 8 in Block K of Incline Village Unit No. 2, Washoe County, Neva-

da. On April 20, 1981, plaintiffs' agent made application to the TRPA for a permit for construction of a single family home on their property.

On April 28, 1981, the TRPA staff completed Part C of the application form submitted by plaintiffs. The completion of Part C conditionally approved the plaintiffs' construction. A TRPA staff member wrote in Part C of the application: "You will need to meet the requirements of # 4 and # 5 before final permit is issued. See attachment." Attached was an uncompleted document entitled "Tahoe Regional Planning Agency Permit." Items # 4 and # 5 on that document read:

4. Said [final construction] drawings include the detail necessary to clearly depict erosion control methods, drainage facilities and revegetation specifications to be in compliance with the Lake Tahoe Basin Water Quality Management Plan;

5. Adequate security, with the Agency as a beneficiary, has been posted guaranteeing proper installation of the slope stabilization and drainage improvements and revegetation as shown on the approved final construction drawings. The security is identified as follows.

In completing Part C of the application form TRPA verified that the project was a permitted use, in the proper land capability class, and in a noncritical area.

On June 4, 1981, TRPA issued a document entitled "Tahoe Regional Planning Agency Permit." It was identical to the document attached to plaintiffs' application form on April 28, 1981, by TRPA, except that this permit had been completed and signed by a TRPA staff person.

On May 9, 1984, TRPA wrote a letter to plaintiffs notifying them that their permit had expired on April 28, 1984.

On May 22, 1984, plaintiffs sought a special determination by the TRPA Governing Board as to the validity of their permit.

The TRPA Governing Board deadlocked 7 votes in favor of and 7 votes against hearing the controversy. Thereupon, TRPA's legal counsel advised the Governing Board that the effect of their action was to deny plaintiffs' appeal of the TRPA staff's determination that the permit expired on April 28, 1984. Plaintiffs exhausted their administrative remedies.

The above facts are undisputed.

## III

### PLAINTIFFS' LAWSUIT

Plaintiffs filed suit in the Second Judicial District Court of the State of Nevada. Subsequently defendant removed the case to this Court.

Plaintiffs' complaint consists of three claims for relief. The first claim is for a declaratory judgment that plaintiffs' permit does not expire until June 4, 1984 (three years after issuance of the "Tahoe Regional Planning Agency Permit"), plus (a) the time between May 9, 1984, and the date of the complaint, plus (b) the time between filing the complaint and final determination of the declaratory judgment issue. Second, plaintiffs seek an injunction tolling the running of the life of the permit pending resolution of their claim for declaratory judgment. Finally, plaintiffs seek damages.

The complaint includes three other claims which were the same as claims one, two, and three, except that they were made by the other original plaintiffs, George A. and Georgia Thatcher, alleging similar facts. On December 10, 1985, a stipulation was filed which dismissed plaintiffs Thatchers' action against TRPA without prejudice.

## IV

### DISCUSSION

In this action there are no genuine issues of material fact. The case may therefore be resolved by summary judgment pursuant to Fed.R.Civ.P. 56.

The plaintiffs applied for a TRPA permit after the effective date of the Compact but before promulgation of the ordinances mandated by Article V(g) of the Compact. As discussed above, the 1980 Compact provided for approval of such projects. Such approval must be made upon written findings that the project is consistent with the regional plan then in effect and with applicable plans, ordinances, regulations and standards of Federal and State agencies relating to the protection, maintenance, and enhancement of environmental quality in the region. 1980 Compact, Article VI(b).

The Compact also provides that:

Approval by the agency of any project expires 3 years after the date of final action by the agency or the effective date of the amendments to this compact, whichever is late [sic], unless construction is begun within that time and diligently pursued thereafter, or the use or activity has commenced. In computing the 3–year period any period of time during which the project is the subject of a legal action which delays or renders impossible the diligent pursuit of that project shall not be counted. Any license, permit or certificate issued by the agency which has an expiration date shall be extended by that period of time during which the project is the subject of such legal action as provided in this subdivision.

1980 Compact, Article VI(p).

On or about February 26, 1981, the Governing Body of TRPA adopted Ordinance No. 81–1. Section 3.10 of TRPA Ordinance No. 81–1 provides:

The residential activities set forth in Sections 3.11, 3.12 and 3.13 are not "projects" within the meaning of the Compact and, except as otherwise set forth in Section 3.13, are exempt from the Agency's review and approval.

Approval of single family dwellings in noncritical areas, such as plaintiffs' would be, were governed by Section 3.13 of TRPA Ordinance 81–1:

The following activities are exempt from the requirement to prepare environmental documentation pursuant to Article

VII(f) of the Compact or Article VI of the rules and regulations of the Agency and shall be granted a permit by the Agency staff within fifteen (15) days from the date of receipt by staff of a complete application therefor, provided the Agency staff determines that the activity, including the site upon which it is to be undertaken, is conforming and in compliance with the land coverage limitations of the land capability system:

> (1) New construction, conversions or changes in use in noncritical areas, provided there is not created in each case more than one (1) single family dwelling.
>
> (2) Placement of one (1) mobile home or modular home as a conforming single family dwelling.

## A

### "Final Action"

The plaintiffs' first contention is that TRPA has erroneously interpreted the phrase "final action" in Article VI(p) of the 1980 Compact by construing it to mean in this case the conditional approval of construction that occurred on April 28, 1981, when the TRPA staff completed Part C of plaintiffs' application form. The plaintiffs assert that in this case "final action" was the issuance of the final permit by TRPA, which took place on June 4, 1981.

The difference is crucial because if TRPA's construction of "final action" is applied, the plaintiffs' permit has expired; if plaintiffs' construction is applied, their permit is still good.

■ Interpretation given a statute by the agency charged with its administration is entitled to deference from the courts, *Thomas v. Peterson*, 753 F.2d 754, 762 (9th Cir.1985), but this deference is not absolute, *Blackfeet Tribe v. State of Montana*, 729 F.2d 1192, 1202 (9th Cir.1984) *aff'd* 471 U.S. 759, 105 S.Ct. 2399, 85 L.Ed.2d 753 (1985). The courts are the final authority on questions of statutory construction. *Alcaraz v. Block*, 746 F.2d 593, 606 (9th Cir.

1984); *Livermore v. Heckler*, 743 F.2d 1396, 1404 (9th Cir.1984).

This means that the Court must review the controlling legislation and make two determinations. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842–843, 104 S.Ct. 2778, 2781–2782, 81 L.Ed.2d 694 (1984). First is the question whether Congress has spoken directly to the precise question at issue. *Id.* If the intent of Congress is clear, that is the end of the inquiry; the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. *Id.* On the other hand, if the court determines that the legislation is ambiguous concerning the issue at hand, the question is whether the agency's interpretation is a reasonable one, consistent with the statute's overall purpose. *Id.* If it is, then the agency's interpretation controls. These legal principles are incorporated into the Compact. 1980 Compact, Article VI(j)(5).

The term "final action" is ambiguous. It could be interpreted to mean the agency's act of granting conditional approval or it could be interpreted to mean the act of sending a property owner a final permit.

It appears that TRPA remains involved with a project at least until construction is complete. Prior to the beginning of construction there must be a definite point at which TRPA's "final action" has been taken, at which time the three year period during which construction may commence begins to run.

■ TRPA's interpretation of the phrase "final action" in Article VI(p) of the Compact is reasonable.

In making a conditional approval, TRPA commits itself to a given course. If further technical requirements are met, the permit becomes final. The crucial act of TRPA—the determination pursuant to Section 3.13 of TRPA Ordinance 81–1 whether the activity is conforming and in compliance with the land coverage limitations of the land capability system—was completed when the TRPA staff filled in Part C of the application form. Thus, there is logic to a

construction of the completion of Part C of the application form as "final action."

Further, the TRPA's interpretation of "final action" is in accord with the implied purpose of Article VI(p) of the Compact to place a definite limit on the life of TRPA permits. If plaintiffs' construction of "final action" was applied, the life of TRPA permits would be within the control of the permittees. This is because of the fact that the applicant who receives a conditional permit may delay as long as desired the completion of the prerequisites to the final permit. By withholding the final drawings or the security the applicant could undermine the obvious intent of the drafters of Article VI(p) to limit the duration of TRPA approvals. On the other hand, if TRPA's interpretation of "final action" is applied, the three year period begins to run at a definite time, the time at which TRPA grants a conditional permit.

Moreover, the reasonableness of TRPA's interpretation of "final action" is buttressed by a reading of Section 3.13 of 81–1. That section requires that a permit shall be granted within 15 days from the receipt by staff of a complete application. The practices of TRPA are in compliance with that provision only if the completion of Part C of the application by the TRPA staff is seen as the granting of a permit, albeit conditional. TRPA's actions are entitled to a presumption of regularity. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971); *Preston v. Heckler*, 734 F.2d 1359, 1372 (9th Cir.1984).

Finally, TRPA's interpretation of final action is consistent with the cases of *League to Save Lake Tahoe v. Tahoe Regional Planning Agency*, 93 Nev. 270, 563 P.2d 582 (1977) and *California Tahoe Regional Planning Agency v. Sahara Tahoe Corporation*, 504 F.Supp. 751 (D.Nev. 1980), in which the courts construed the meaning of the phrase "final action" as used in Article VI(k) of the 1969 Compact. The legislature retained the phrase "final action" when it reenacted the Compact in 1980, and the implication is that earlier judicial constructions of the phrase were adopted. *James v. O'Bannon*, 715 F.2d 794, 804–805 (3d Cir.1983), *cert. denied*, 470 U.S. 1050, 105 S.Ct. 1746, 84 L.Ed.2d 812 (1985). TRPA's interpretation of "final action" is also in accord with the recent case of *I.C. Deal v. Tahoe Regional Planning Agency*, —— F.Supp. ——, CV–R–84–296–BRT (D.Nev. March 6, 1986) in which the court held that conditional approval, rather than issuance of a final permit, constituted final agency action.

TRPA's interpretation of "final action" as the act of granting a conditional permit by completing Part C of plaintiffs' application is reasonable and will not be disturbed by this Court.

## B

### Equitable Estoppel

The plaintiffs' second contention is that TRPA should be equitably estopped from claiming that the plaintiffs waited too long to begin construction of their Lake Tahoe home.

The traditional test for estoppel has four parts:

(1) the party to be estopped must know the facts;

(2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended;

(3) the latter must be ignorant of the facts; and

(4) he must rely on the former's conduct to his injury.

*Jaa v. INS*, 779 F.2d 569, 571 (9th Cir. 1986); *Johnson v. Williford*, 682 F.2d 868, 872 (9th Cir.1982); *United States v. Georgia-Pacific Co.*, 421 F.2d 92, 96 (9th Cir. 1970).

"A party asserting estoppel against the government must begin by demonstrating the traditional elements, but he must do more, for 'the Government may not be estopped on the same terms as any other litigant.' *Heckler v. Community Health Services of Crawford County*, 467 U.S. 51, 104 S.Ct. 2218, 2224, 18 L.Ed.2d 42 (1984)."

*Jaa,* 779 F.2d at 571–572. Two special showings are required to invoke equitable estoppel against the government.

■ First, the government's actions must be shown to have amounted to "affirmative misconduct." *Jaa,* 779 F.2d at 572; *Morgan v. Heckler,* 779 F.2d 544, 545 (9th Cir.1985); *Simon v. Califano,* 593 F.2d 121, 123 (9th Cir.1979) (per curiam); *Santiago v. INS,* 526 F.2d 488, 491–492 (9th Cir.1975) (en banc), *cert. denied,* 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976). More than a mere failure to act is required. *Oki v. INS,* 598 F.2d 1160, 1162 (9th Cir.1979). Further, the affirmative misconduct must be more than negligence. *Morgan,* 779 F.2d at 545; *Simon,* 593 F.2d at 123.

Second, even affirmative misconduct will not estop the government unless "the government's wrongful conduct threatened to work a serious injustice and ... the public's interest would not be unduly damaged by the imposition of estoppel." *Worley v. Harris,* 666 F.2d 417, 421 (9th Cir. 1982); *United States v. Lazy FC Ranch,* 481 F.2d 985, 989 (9th Cir.1973).

The plaintiffs have succeeded in establishing several of the elements of their equitable estoppel argument. The undisputed facts, however, do not amount to affirmative misconduct on the part of the defendant. The plaintiffs attempt to show affirmative misconduct in two ways.

First, they point to the following handwritten notation on the April 28, 1981, conditional permit: "You will need to meet the requirements of # 4 and # 5 before final permit is issued." Plaintiffs argue that the notation indicated to them that the agency had not yet taken final action. They assert that the notation led them to believe that final agency action would occur only when TRPA issued a final permit.

■ Nevertheless, the notation is consistent with TRPA's assertion that it took final action by committing to a conditional permit. The notation says nothing about the permit's lifespan. It only informed the plaintiffs of the nature of the conditions that remained regarding their permit.

The plaintiffs have failed to show more than a negligent misleading of them by TRPA. The notation does not show the required affirmative misconduct required to invoke the doctrine of equitable estoppel against the government.

Next, plaintiffs' point to TRPA's failure to indicate on the face of either the April 28, 1981, conditional permit or the June 4, 1981, final permit the expiration date of the permit. Plaintiffs point out that Section 5.15 of TRPA's Rules and Regulations, adopted on February 25, 1981, provides that permits shall be issued on a form that includes:

"The time for commencement of the project, each permit containing a statement that any request for an extension of the time for commencement must be applied for, and an extension approved, prior to expiration of the permit."

It is virtually undeniable that TRPA, by not placing the expiration date on the plaintiffs' permit, failed to comply with its own Rules and Regulations.

■ Nonetheless, TRPA's failure was an omission. While the omission seems more reprehensible because it was a breach of a duty imposed by TRPA rules, it remains an omission. The law in this circuit is clear that a failure to act is not affirmative misconduct, especially where fault worse than negligence is not shown. Such is the case here. In view of the policy in the law disfavoring the application of equitable estoppel against government entities, this Court will not forge an unprecedented exception to the requirement of affirmative misconduct.

Thus, there is no question of fact remaining concerning the affirmative misconduct issue. As a matter of law, equitable estoppel cannot be applied against TRPA in this case.

While this result may seem severe, it is notable that plaintiffs' did not seek information regarding the expiration date of their permit. They chose to rely on their

own understanding of the law, one that turned out to be erroneous. "Persons dealing with the government are charged with knowing government statutes and regulations, and they assume the risk that government agents may exceed their authority and provide misinformation." *Lavin v. Marsh*, 644 F.2d 1378, 1383 (9th Cir.1981).

IT IS, THEREFORE, HEREBY ORDERED that the plaintiffs' Motion for Partial Summary Judgment (document # 14) is *DENIED.*

IT IS FURTHER ORDERED that the defendant's Motion for Summary Judgment (document # 11) is *GRANTED.*

IT IS FURTHER ORDERED that judgment shall be entered in favor of defendant and against plaintiffs.