**TAHOE SIERRA PRESERVATION COUNCIL, INC., et al., Plaintiffs,**

v.

**TAHOE REGIONAL PLANNING AGENCY, et al., Defendants.**

**No. CV–R–84–257–ECR.**

United States District Court, D. Nevada.

Dec. 9, 1992.

Hoffman, Lien, Faccinto & Spitzer, by Lawrence L. Hoffman, Robert Damon Spitzer and Gregg R. Lien, Tahoe City, CA, for plaintiffs.

Richard M. Frank, California Dept. of Justice, Sacramento, CA, for State of Cal.

Deputy Atty. Gen., Environmental Div., Carson City, NV, for State of Nev.

Gary A. Owen, Carson City, NV, for TRPA.

## ORDER

EDWARD C. REED, Jr., District Judge.

This consolidated case (now before this Court on a Motion to Dismiss) arises from two cases filed on June 25, 1984 by the Tahoe Sierra Preservation Council ("TSPC") and the several hundred individually-named plaintiffs who contended that Tahoe Regional Planning Agency's (TRPA) 1984 Regional Plan, and its predecessor interim Ordinance 81–5[1], had denied them all "economically viable use" of their properties—primarily vacant but lawfully-zoned single-family homesites. The TSPC plaintiffs planned to build permanent or vacation single-family homes on these lots located in the Tahoe Basin. Plaintiffs owning property on the Nevada side of the Lake Tahoe Basin filed their action in this Court. Those owning property on the California side, filed their action in the United States District Court for the Eastern District of California.[2] This Order addresses only the Motion to Dismiss the First Amended Complaint filed by the Nevada-side plaintiffs following *TSPC I* (document # 117); and only the facts relevant to Nevada half of this dispute will be reviewed. (The order addressing the California-side plaintiffs is a separate document to be filed contemporaneously with this Order).

## HISTORY

The original Complaints filed on June 25, 1984 contained nearly identical allegations and legal claims. In both cases, the plaintiffs sought the following relief from all defendants: 1) Just Compensation for the taking of their property; 2) declaratory and injunctive relief based upon the due process, equal protection, and takings clauses of the United States Constitution; and 3) damages under 42 U.S.C. 1983 for deprivation of their constitutionally-protected civil rights. The district courts each granted motions to dismiss/summary judgment in favor of the defendants.[3] The defendants

---

**1.** It is helpful to consider this case in light of four distinct time periods: Period I—June 25, 1981 through August 28, 1983 when TRPA Ordinance 81–5 prohibiting development on the properties was in effect. A limited exception was made to this prohibition available only to the Nevada property owners of Class 1, 2, and 3 lots (not available to Nevada property owners of SEZ lots). Case-by-case consideration and exceptions were potentially available to these plaintiffs during this time. Period II—August 28, 1983 through April 26, 1984. During this period a complete moratorium (Resolution 81–23) was instituted and no property could be developed and the case by case review previously available to the Nevada property owners had expired. Period III—April 26, 1984 to June 25, 1987. The 1984 plan was approved at this time; however, the federal district court for the Eastern District of California enjoined the TRPA from approving any projects under the plan pursuant to a suit brought by the State of California against TRPA alleging that the plan violated the 1980 Compact. In effect, the District Court prevented the Plan from being implemented. Period IV—June 25, 1987 TRPA adopted a new regional plan (the Plan includes rights to appeal land classifications, transfer rights, and the right to seek amendment to the plan) still in effect.

**2.** The Nevada-side plaintiffs and the California-side plaintiffs both consist of two groups: those who own land in area classified as Stream Environment Zones (the SEZ plaintiffs) and those who own land in Class 1, 2, and 3 areas (the "Class 1, 2 and 3 plaintiffs").

**3.** The named defendants were TRPA, the States of California and Nevada, and the individual members of the TRPA Governing Board. The individual members of TRPA's 1984 Governing Board have subsequently been voluntarily dismissed by plaintiffs.

appealed the decisions to the Ninth Circuit.[4]

Between the time of the District Court decisions and oral argument before the Ninth Circuit, the Supreme Court announced its decision in *First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). In *First English,* the Supreme Court held that "temporary takings which deny a landowner all the use of his property are not different in kind from permanent takings, for which the Constitution clearly requires compensation." *First English,* 482 U.S. at 318, 107 S.Ct. at 2388.[5] The rulings by the Court of Appeals were, in part, guided by this decision.

The Ninth Circuit decided the case appealed from the District Court of Nevada on August 27, 1990 (*TSPC I*)[6] and the case appealed from the Eastern District of California on June 10, 1991 (*TSPC II*).[7] In *TSPC I* the Circuit Court held that (1) some claims were unripe; (2) TRPA was not immune from liability for inverse condemnation; and (3) owners of property subject to prohibition against development had a claim for reimbursement of assessments independent of any claim for taking of land itself.

Specifically, the Court in *TSPC I* dismissed all claims for declaratory and injunctive relief as being moot in view of TRPA's subsequent adoption of its 1987 Regional Plan (distinguishing declaratory and injunctive relief as providing no benefit to the plaintiffs as compared to compensatory damages, still of value, for a temporary taking). The Court allowed the plaintiffs to seek damages for deprivation of the plaintiffs' right to enjoy certain public improvements for which they had previously paid assessments.[8] Most important to the matter at hand, by finding that the TRPA was not immune from liability and that a right to compensation for "temporary taking" exists, the Court also reinstated a portion of the Nevada plaintiffs' claims for just compensation as a result of the alleged regulatory takings. Partnered with this finding was the Circuit Court's reinstatement of the plaintiffs' Civil Rights Act claims to the extent they were based upon denial of Just Compensation relating to the alleged regulatory takings.

The ruling by the Court of Appeals is complicated however by the affirmation of the District Court's dismissals due to ripeness and mootness. With regard to the alleged regulatory takings arising from TRPA's adoption of its 1984 Plan (Period III), Judge Reinhardt found the claims to be *un*ripe, Judge Fletcher found the claims to be moot, and Judge Kozinski in a dissenting opinion, found the claims to be ripe for review. Plaintiffs encourage this Court to consider the Appellate Court's finding in *TSPC II* where the position of Judge Kozinski—that the plaintiffs' claims as to the 1984 Plan are in fact ripe for review despite the fact that the plaintiffs did not seek to amend the plan—was unanimously adopted. There is no difference in the facts between the Nevada plaintiffs and

---

**4.** On appeal the plaintiffs did not contest the dismissal of the monetary damage claims as to the States of California and Nevada, which had been dismissed based on Eleventh Amendment immunity grounds.

**5.** The Ninth Circuit also found that continuing to distinguish those agencies with the power of condemnation (which can appropriately be held liable in damages for inverse condemnation) from those without such power (immune from liability for inverse condemnation) would "unavoidably conflict with the reasoning of *First English.*" *TSPC I* at 1341.

**6.** "TSPC I" hereinafter refers to the Nevada-side decision by the Ninth Circuit *Tahoe Sierra Preserv. v. Tahoe Reg. Planning Agency,* 911 F.2d 1331 (9th Cir.1990).

**7.** "TSPC II" hereinafter refers to the California-side decision of the Ninth Circuit *Tahoe Sierra Preserv. v. Tahoe Reg. Planning Agency,* 938 F.2d 153 (9th Cir.1991).

**8.** The Court of Appeals limited this cause of action to assessments actually paid to TRPA. Because no assessments were paid to TRPA in this case, no claims have been raised pursuant to the ruling on this point. *TSPC II* found that property owners are entitled to pursue a refund from the agency that collected the assessments for improvements during a temporary taking. While TRPA did not collect assessments in this case, assessments may have been collected by a local improvement district.

the California plaintiffs with regard to the 1984 Plan; however, this Court chooses to follow the law-of-the-case doctrine. Despite the inconsistency of the Appellate Court rulings, the per curium opinion in *TSPC I* dismissed the claims. This Court is not free to disregard the ruling in *TSPC I* that ripeness standards preclude the Nevada plaintiffs from pursuing a takings claim pertaining to the 1984 Regional Plan. The alternative theory of futility pursued by the plaintiffs is irrelevant in light of the injunction ordered by the Eastern District Court of California during this time and is discussed later in this Order.

The Court of Appeals also upheld the dismissal of claims as they pertained to the Nevada Class 1, 2, and 3 plaintiffs for the 26–month period from June 25, 1981 through August 28, 1983 (Period I) because these plaintiffs did not pursue the available "case-by-case exception." The Court held that the claims were not ripe and affirmed the dismissal. Plaintiffs' attempt to now claim that case-by-case review would have been "futile" cannot change the ruling by the Court of Appeals. The futility doctrine is not a new theory created by the Appellate Court. The plaintiffs should have made this argument at the time the claims were being considered by the Court. This Court will not consider cursory and untimely arguments on issues that have already been decided. Dismissal of the claims pertaining to Nevada Class 1, 2, and 3 plaintiffs for the period from June 25, 1981 through August 28, 1983 (Period I) will not be reconsidered.

Pursuant to the rulings by the Ninth Circuit in *TSPC I* and *TSPC II* and the above discussion, the only claims that may be appropriately included in the Plaintiffs' First Amended Complaint are limited to Just Compensation for the regulatory taking of property and damages for deprivation of constitutionally-protected civil rights pursuant to the Federal Civil Rights Act. These claims are further limited by the previous dismissal of allegations arising from Period I as to the Nevada Class 1,

2, and 3 plaintiffs and from Period III as to all the Nevada plaintiffs. This leaves only Period I as to the SEZ plaintiffs, Period II as to all the plaintiffs, and Period IV as to all the plaintiffs as relevant for further consideration in this case.

## CASE ON REMAND

After receiving permission from this Court, the Nevada–side plaintiffs filed their First Amended Complaint on October 28, 1991 (the California-side plaintiffs filed their First Amended Complaint On March 27, 1992). The First Amended Complaint states three claims for relief. The first claim is applicable to the SEZ plaintiffs alleging a regulatory taking of the plaintiffs' properties resulting from the prohibitions contained in TRPA's 1984 Plan and predecessor "interim moratoria,"[9] and continued in force and effect by TRPA's 1987 Plan. In the second claim for relief, the Class 1, 2 and 3 plaintiffs seek the identical relief. In the third claim for relief, all plaintiffs seek additional damages for deprivation of their Constitutionally-protected civil rights pursuant to the Federal Civil Rights Act. The gravamen of the Complaint is that the TRPA's regulation, at face value and without reference to the any of the regulations application to any particular parcel, effects an unconstitutional taking of property. This is to be contrasted with an "as applied" takings claim, in which it is alleged that the particular impact of the regulation upon a given parcel raises an inverse condemnation claim. Facial challenges are appropriate for disposition by pre-trial motion. *See e.g., Keystone Bituminous Coal Assn. v. DeBenedictis*, 480 U.S. 470, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987).

It is apparent from the First Amended Complaint that the plaintiffs have taken a broad view of the Court's decisions in *TSPC I* and *TSPC II.* The plaintiffs have coupled their understanding of the appellate decisions with a liberal reading of *First English, supra* and *Lucas v. South*

---

**9.** Plaintiffs use "interim moratoria" to include Period I (June 25, 1981 through August 28, 1983—Ordinance 81–5) and Period II (August 28, 1983 through April 26, 1984—Resolution 83–21).

*Carolina Coastal Council,* — U.S. —, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) to expand their takings claims in the Amended Complaint. Rather than realizing that limited claims, further limited by certain facts, were found to be potentially viable by the Appellate Court, the plaintiffs have made new allegations and ignored the limitations prescribed.

In response to the First Amended Complaints, both the TRPA and the State of California filed Motions to Dismiss (documents # 140–141 and # 145–146). The motion on behalf of California incorporated all of the TRPA's arguments and TRPA joined the State of California in its Motion to Dismiss. Plaintiffs opposed the Motions and defendants replied. The matter is now ripe for the Court's decision.

■■■ A court may grant a motion to dismiss for failure to state a claim on which relief can be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Adult Video Assoc. v. Barr* 960 F.2d 781, 784 (9th Cir.1992). A court may only look to the facts alleged in the complaint when deciding whether to grant a 12(b)(6) motion. *Id.* All material facts alleged in the complaint must be taken as true and construed in the light most favorable to the nonmoving party. *Amfac Mortgage Corp. v. Arizona Mall of Tempe* 583 F.2d 426, 430 (9th cir. 1978). However, it is not proper for the Court to assume that "the pleader can prove facts that he has not alleged or that the defendants have violated the ... laws in ways that have not been alleged." *Associated General Contractors v. California State Council,* 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983).

Keeping in mind the deference which this Court is bound to give to the plaintiffs allegations, each claim will be considered in the context of the relevant time period of the takings claims.

*Period I* (June 25, 1981–August 28, 1983— Ordinance 81–5)

■■ The allegations of a regulatory taking arising from the period of June 25, 1981 through August 28, 1983 (Ordinance 81–5 period) will be discussed first. As discussed above, the plaintiffs' claims are limited to the SEZ plaintiffs during this period. This Court has previously found, and the Appellate Court affirmed, that due to the availability of case-by-case review with respect to the Class 1, 2, and 3 plaintiffs their claims are not ripe (and can never be ripe because review was never sought while the regulation was in effect). The defendants have raised a legitimate statute of limitations defense. A 60–day statute of limitation is imposed by the Compact for any legal action arising out of any ordinance of the agency. Tahoe Regional Planning Compact (Public Law 96–551, 94 Stat. 3233; Cal.Gov.Code §§ 66800 & 66801; N.R.S. § 277.190 & § 277.200 Art. VI(j)(4)).[10] The TRPA took final action to enact the ordinance alleged to constitute a facial taking on June 25, 1981. The first complaint was not filed in this case until 1984.

Plaintiffs' efforts to save themselves from the requirement of filing prompt claims are not persuasive. Some takings do occur gradually and incrementally thereby extending the appropriate time period for filing an inverse condemnation suit until the consequences of the event are fully known. *See United States v. Dickinson,* 331 U.S. 745, 746–750, 67 S.Ct. 1382, 1383–85, 91 L.Ed. 1789 (1947) (physical taking ultimately took place due to flooding caused by Federal Government damming a river—plaintiff permitted to file complaint when flooding damage could be determined); *Pierpont Inn, Inc. v. State,* 70 Cal.2d 282, 74 Cal.Rptr. 521, 449 P.2d 737 (1969) (plaintiff permitted to file complaint after property was appropriated for a freeway but prior to completion of construction project).

---

**10.** The statute reads in pertinent part: "A legal action arising out of the adoption or amendment of the regional plan or of any ordinance or regulation of the agency, or out of the grant-ing or denial of any permit, shall be commenced within 60 days after final action by the agency."

The case at hand arises from a claim against a regulatory taking. There has been no continuous physical invasion of the plaintiffs land culminating in a taking. It was clear from the day Ordinance 81-5 was adopted that development was prohibited as to the SEZ plaintiffs. A facial takings claim based upon Ordinance 81-5 became actionable upon the date that TRPA took final action to enact the ordinance. There is no reason for the plaintiffs' delay in alleging a regulatory taking as a result of this Ordinance. Moreover, the defendants have not waived their right to raise this defense. There has been no adverse ruling by any of the Courts regarding the limitation of action issue as it pertains to Ordinance 81-5. In fact, during the litigation of this case, the Courts have consistently shown an overt unwillingness to reach decisions regarding the statute of limitations issues that had not been raised while alerting the parties and this Court that statute of limitations issues may be relevant. As there were no adverse rulings below, there was no basis for cross appeal and accordingly no waiver of the defense has occurred. "Even if an appellee does not file a cross appeal ... he may defend the judgment in his favor with any argument that is supported by the record, regardless of whether it was ignored by the Court." (9 Moore's Federal Practice (2d ed. 1992) ¶ 204.11[3] at 4–47). TSPC's regulatory takings claims arising from Period I (Ordinance 81-5) are barred by the 60–day limitation of actions imposed by the Compact and are dismissed.

*Period II* (August 28, 1983–April 26, 1984—Resolution 83-21)

■ As to the second relevant period, Resolution 83-21 was in effect from August 28, 1983 through April 26, 1984 (the eight-month moratorium). The 60–day statute of limitation applies to this period as well. A temporary resolution falls within the scope of the statute of limitations provided in the Compact. The Compact expressly states that "any regulation" of the Agency is subject to a 60–day statute of limitations.[11] There is no logical argument as to why Board Resolution 83-21 would not fall within the scope of this statute. However, the Compact further expresses that any legal actions shall take place 60 days after "final action" by the agency. Resolution 83-21 was temporary in nature—admittedly an interim measure.[12] The notion that a "temporary resolution" amounts to "final action" deserves discussion.

There is little authority as to what constitutes "final action" on the part of TRPA. Previous discussions have centered around permit-specific disputes. *See Cal. Tahoe Regional Planning v. Sahara Tahoe Corp.,* 504 F.Supp. 751 (D.Nev.1980) (Court held that when TRPA treated a second application for permit for parking garage as request to reconsider Agency's previous denial of the request and then denied the request for a rehearing, the Agency took a "final action"); *Sederquist v. Tahoe Regional Planning Agency,* 652 F.Supp. 341 (D.Nev.1987). (Court held that TRPA's conditional approval of construction, rather than issuance of final permit, was "final action" within meaning of Compact providing for permit expiration three years after date of final action.)

Defendants assert that final action occurs at the time of adoption. Determination of when final action occurred as to the moratorium is crucial because if TRPA's construction is applied, then the plaintiffs are time-barred from any claim of a facial taking during this period. However, if it can be argued that a temporary resolution implementing a moratorium, does not constitute a final action, then the plaintiffs may be able to save this claim.

11. See note 10 above.

12. The TRPA Governing Board temporarily suspended issuance of permits for projects because a serious legal question arose concerning TRPA's ability to continue project review and approval beyond August 26, 1983 without having an amended plan in effect. Article V(c) of the Compact required the amended plan to be adopted within one year after the environmental thresholds were established. The environmental thresholds had been established on August 26, 1982.

 Interpretation given a statute by the agency charged with its administration is entitled to deference from the courts, *Thomas v. Peterson,* 753 F.2d 754, 762 (9th Cir.1985). It has already been established that the term "final action" is ambiguous. *See Sederquist,* 652 F.Supp. 341, 345. In the case at hand it could be interpreted to mean the Board's adoption of Resolution 83–21 or it could be interpreted to mean the final adoption of the amended plan following the Board's interim measure. If the court determines that legislation is ambiguous, the question is whether the agency's interpretation is a reasonable one, consistent with the statute's overall purpose. *Chevron, U.S.A. Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). If TRPA's interpretation is reasonable, then its interpretation controls. These legal principles are incorporated into the Compact. 1980 Compact, Article VI(j)(5).

Despite its temporary nature (8 months) the policy and effect of the Resolution was clear—no development permitted. The resolution was neither ambiguous nor its application inconsistent. The day the Board adopted the Resolution it took final action as to what development could occur prior to the adoption of the 1987 Plan. Further, finding the adoption of a resolution as final action is consistent with *Sederquist, supra* where the conditional approval, although an interim measure, was found to constitute final action. Finally, the TRPA's interpretation of the adoption as "final action" is in accord with the implied purpose of Article VI(j) of the Compact to place a reasonable time-bar on actions. TRPA's interpretation of "final action" as to the adoption of Resolution 83–21 is reasonable. Consequently, TSPC's claims based upon Period II Resolution 83–21 are time-barred and dismissed.

*Period III* (April 26, 1984–June 25, 1987—1984 Plan and Court Injunction)

 The third relevant time period (1984 Plan and the court ordered injunction) has been discussed above. Plaintiffs have no valid claims relevant to this time period as they have been previously dismissed by this Court and the Court of Appeals as being unripe. Moreover, the orders of the federal district court for the Eastern District of California enjoining TRPA from implementing the plan prevent TSPC from having a legitimate cause of action with relation to this period. This Court need not address the plaintiffs new assertion—that seeking an amendment to the plan would have been "futile" and therefore the ripeness defense is without merit—due to the district court's injunction during this time. California Federal District Court's orders enjoining TRPA from implementing the plan prevent TSPC from having a legitimate cause of action with relation to this period. This Court need not address the plaintiffs new assertion—that seeking an amendment to the plan would have been "futile" and therefore the ripeness defense is without merit—due to the injunction by the District Court of Eastern California.[13]

The Court of Appeals specifically retained this issue for this Court. "We leave it to the district court to determine whether the intervening injunction prevented the 1984 Plan from causing any harm to the plaintiffs." *TSCP II* at 157. TSPC's taking challenge to the 1984 Regional Plan must fail because that plan was enjoined and never implemented, hence the requisite causation between the 1984 Plan and TSPC's purported injury is lacking as a matter of law. The injunction ordered by the federal court prevented the 1984 Plan from ever taking effect. TRPA was enjoined from granting any development or building permit. Because the plan was never put into effect it could not have caused a taking. The claim fails for lack of causation. *See Carpenter v. Tahoe Regional Planning Agency,* 804 F.Supp. 1316 (D.Nev.). TSPC's claims for relief arising from Period III are dismissed.

---

**13.** The State of California filed suit against TRPA on April 26, 1984 alleging that the 1984 Plan violated the Compact. Pursuant to this suit, the federal district court for the Eastern District of California ordered a preliminary injunction, preventing TRPA from authorizing any development. The injunction was extended through July 5, 1987.

*Period IV* (June 25, 1987–present—1987 Plan)

■ The 1987 Plan encompasses the last relevant time period to be addressed. Claims arising under this plan are also dismissed. The conclusory allegation that the 1987 Plan is merely a continuation of the 1984 Plan and other regulations that allegedly amount to a taking is not persuasive to this Court even in the deferential light the Court must use in evaluating the plaintiffs claims. This action was originally filed in 1984 long before the 1987 Plan was in effect.

■ Raising allegations against TRPA on the basis of the 1987 Plan runs afoul of the statute of limitations. "An amendment of a pleading relates back to the date of the original pleading when … (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading …" Fed.R.Civ.P. Rule 15(c)(2). When a plaintiff attempts to allege an entirely different transaction by amendment, Rule 15(c) will not authorize relation back. 6A. Wright, Miller & Kane, *Federal Practice and Procedure* § 1497 (2d ed. 1990). The TRPA's regulatory scheme embodied by the 1987 Plan is "markedly different from the 1984 Plan it replaced." *TSPC I* at 1334. As a result, the enlarged lawsuit now brought by TSPC rests on a different factual basis than those claims which survived from the original complaints. Amendments to complaints alleging claims arising from different contracts, different patents and separate violations do not "relate" back to the original complaint. Amendments that merely correct technical deficiencies or expand or modify the facts alleged in the earlier pleading meet the Rule 15(c) test and will relate back.

■ Because the rationale of the relation back rule is to ameliorate the effect of the statute of limitations[14] rather than to promote the joinder of claims and parties, the standard for determining whether amendments qualify under Rule 15(c) is not simply an identity of transaction test; although not expressly mentioned in the rule, the courts also inquire into whether the opposing party has been put on notice regarding the claim raised by the amended pleading. *Id.* In this case the allegations of taking pursuant to the 1987 Plan do not rest on the same general conduct, transaction or occurrence as the earlier claims. Nor does the fact that plaintiffs were pursuing taking claims in 1984 put the plaintiffs on notice that six years later (and approximately four years after the adoption of the plan at issue) an entirely different plan would be attacked as constituting a facial taking.

While Rule 15(a) does place an additional burden on the defendants in this case to have filed a separate complaint against the TRPA with regard to its 1987 plan, the alternative is to place an additional burden on the plaintiff—the burden of defending a new claim after 6 years of litigation centered around distinctly different claims and facts. The plaintiffs arguments of inconvenience are well taken; however, they do not weigh heavier than the rational behind Rule 15. Nor does justice require that this Court give leave to the amendment with regard to the new claims arising from the 1987 Plan. The plaintiffs' concern that the defendants would have "squealed like stuck pigs" had they (the plaintiffs) sought to file amended complaints while the matter was on appeal presents a colorful image but an unconvincing argument. Requiring the plaintiff to file a separate complaint against the TRPA for the 1987 does not amount to piecemeal litigation. The 1987 Plan is completely different. It is not merely an amended 1984 Plan without substantive changes (compare with *Tollis v. San Bernardino County,* 827 F.2d 1329 (9th Cir, 1987)) nor is a continuing process of a physical intrusion (compare with *United States v. Dickinson, supra*) nor does the 1987 Plan merely add a variance provision to the original statute (compare with *Lucas v. South Carolina Coastal Council, supra*).

---

**14.** The Court notes that the time period for filing such an action is now barred by the 60 day statute of limitation for actions against the 1987 Plan.

The Ninth Circuit by mentioning the 1987 plan in its mootness analysis of certain claims did not open the door for claims arising from the Plan to be included in the Amended Complaints. If anything, the Court's affirmation of the dismissal of claims for declaratory and injunctive relief from the 1984 Plan because they were mooted by the 1987 Plan, demonstrates the Court's recognition that an entirely new statutory scheme was in place. A claim based upon an entirely different regulatory plan cannot be added to an existing complaint. The 1987 Plan was developed from discussions lasting over two years in a "consensus building workshop" initiated by TRPA and designed to include the broadest possible range of private and governmental interests and viewpoints. Moreover, the 1987 Plan could not be considered a continuation of the 1984 Plan because the 1984 Plan never went into effect as a result of the District Court of California's order enjoining the TRPA from implementing the plan.

While the Court dismisses the claims arising from the 1987 Plan on the basis of Rule 15 and the time-bar, it is also noted that claims in respect to the 1987 Plan would not be ripe until the plaintiffs avail themselves of the mechanisms in the 1987 Plan (e.g. challenging the IPES Scores, exploration of development transfer, and amendment to the plan). Plaintiffs must avail themselves of the options available as a prerequisite to any claim against TRPA. TSPC's claims based upon the 1987 Plan are dismissed because they are not properly joined, do not relate back to the 1984 Plan and are now time-barred by the 60–day statute of limitations and are not ripe even if they had been validly asserted.

CONCLUSION

The Court of Appeals in *TSPC I* and *TSPC II* found that a temporary takings claim can exist and should compensated even after the period of the taking has passed. The Circuit Court relied on *First English* for this finding and now *Lucas* adds support to such a claim. However, the Circuit Court did not render any decisions as to potential statute of limitations defenses, the effect of the court injunction during the 1984 Plan, or the ripeness or appropriateness of any the claims arising from the 1987 Plan. Plaintiffs attempted to simplify this very complex matter by focusing their arguments on liberal readings of the two new Supreme Court cases and a broad reading of the Court of Appeals' limited rulings. Nevertheless, plaintiffs claims cannot survive a Motion to Dismiss.

As to plaintiffs First Claim for Relief (SEZ plaintiffs), The claim arising from Period I is time-barred and dismissed. The claim arising from Period II is time-barred and dismissed. The claim arising from Period III lacks the requisite causation and is dismissed. The claim arising from Period IV was made in violation of Fed.R.Civ.P. Rule 15, is time-barred, is not ripe, and is dismissed.

As to plaintiffs' Second Claim for Relief (Class 1, 2, and 3 plaintiffs). The claim arising from Period I was dismissed and affirmed on appeal on the basis of ripeness. The claim arising from Period II is time-barred and dismissed. The claim arising from Period III lacks the requisite causation and is dismissed. The claim arising from Period IV was made in violation of Fed.R.Civ.P. Rule 15, is time-barred, is not ripe and is dismissed.

As to plaintiffs' Third Claim for Relief (SEZ and Class 1, 2, and 3 plaintiffs) the claim was limited to the extent it was based on the claims of denial of Just Compensation. No basis for the claim exists in light of the dismissal of both claims One and Two as to Periods I, II, III and IV. Claim Three is dismissed.

IT IS, THEREFORE, HEREBY ORDERED that defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (document #117) is GRANTED. The Clerk shall enter judgement accordingly.