**LINCOLN GENERAL HOSPITAL,**
**Appellant,**

**v.**

**BLUE CROSS/BLUE SHIELD**
**OF NEBRASKA, Appellee.**

No. 91–1777.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 14, 1991.

Decided May 12, 1992.

Rehearing and Rehearing En Banc
Denied June 24, 1992.

James Conrad Zalewski, Lincoln, Neb., argued, for appellant.

Geoffrey V. Pohl, Omaha, Neb., argued (John F. Thomas, on the brief), for appellee.

Before LAY, Chief Judge,* ARNOLD, Circuit Judge,** and STUART,*** Senior District Judge.

ARNOLD, Circuit Judge.

Lincoln General Hospital appeals from a grant of summary judgment in favor of Blue Cross/Blue Shield of Nebraska on the hospital's claim for payment of a bill for the treatment of Delores Phillips. The District Court[1] held that Blue Cross did not violate the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. §§ 1161 *et seq.*, in administering the health plan of Mrs. Phillips's ex-husband, Roy Phillips. In addition, the Court held that

---

* The Hon. Donald P. Lay was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before the opinion was filed.

** The Hon. Richard S. Arnold became Chief Judge of the United States Court of Appeals for the Eighth Circuit on January 7, 1992.

*** The Hon. William C. Stuart, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

1. The Hon. Warren K. Urbom, Senior United States District Judge for the District of Nebraska.

Blue Cross did not violate its fiduciary duties as plan administrator and that it did not act in an arbitrary and capricious manner in its administration of the plan. We affirm.

## I.

Roy Phillips was employed by the Lincoln Public School System and participated in a group health-insurance program provided by Blue Cross. The plan also covered Delores Phillips, his wife. Roy and Delores Phillips were divorced on December 9, 1987. Under the policy, however, Delores Phillips remained covered until December 31, 1987.

Under COBRA, Delores Phillips was entitled to a continuation of coverage under her husband's plan, provided either she or her husband notified the plan administrator of their divorce within 60 days of her loss of coverage. On February 1, 1988, before the end of the 60–day COBRA notice period, Delores Phillips was involved in an accident which resulted in her lapsing into a coma. A guardian was appointed for her on February 4, 1988, and a successor guardian was appointed in March.

On February 3, Roy Phillips notified his employer of the divorce. That same day, his employer provided Mr. Phillips with the COBRA forms that his ex-wife would need to make her COBRA election. Mr. Phillips, without consulting his ex-wife, elected coverage on her behalf and paid one month's premium to Blue Cross. No further premium payments were made. On February 15, 1988, Blue Cross mailed a premium notice for the months of February and March, along with an identification card and a benefits booklet, to Delores Phillips. Appendix 231, 235–36. On that same day, the hospital called Blue Cross to verify Mrs. Phillips's coverage. A Blue Cross employee, Azalia Jackson, confirmed her COBRA continuation coverage through a computer check of Mrs. Phillips's records. Ms. Jackson, however, did not inform the hospital

that Mrs. Phillips was currently in a "grace period," and that her coverage would lapse in 18 days if the delinquent premiums were not paid.[2]

On March 8, 1988, the hospital submitted an interim bill to Blue Cross for the treatment of Delores Phillips in the amount of $93,930.10. A final bill for $111,217.58 was submitted on April 7, 1988. Blue Cross denied coverage, claiming that Delores Phillips's coverage ended on January 31, 1988, for non-payment of premiums. Blue Cross arrived at that conclusion by applying the initial premium check submitted by Roy Phillips retroactively to provide coverage for Delores Phillips during the month of January. As no further premiums were submitted for or on behalf of Delores Phillips, Blue Cross took the position that coverage ended on January 31, 1988, the last date for which a premium was paid. As a result, the medical costs incurred by Delores Phillips after that date were not covered, Blue Cross said.

In this appeal, the hospital, as assignee of Delores Phillips's rights, claims that Blue Cross (1) did not comply with COBRA, (2) did not properly administer the health plan, (3) was estopped to deny coverage, and (4) had waived its right to apply the premium retroactively. After reviewing these claims, we hold that Blue Cross did not fail in any of its responsibilities in its administration of the health plan.

## II.

The most hotly contested issue in this case is whether Blue Cross complied with COBRA. Under COBRA, a "qualified beneficiary who would lose coverage under [a health plan] as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan." 29 U.S.C. § 1161(a). A "qualified beneficiary" is defined as:

with respect to a covered employee under a group health plan, any other individual

---

**2.** The hospital argues that this information was available to Ms. Jackson on the same computer screen which showed that Delores Phillips was currently covered. However, no evidence supports this claim. In addition, the hospital never asked this specific question when it called Blue Cross.

who, on the day before the qualifying event for that employee, is a beneficiary under the plan—

(i) as the spouse of the covered employee,....

29 U.S.C. § 1167(3)(A)(i). A "qualifying event" is:

... any of the following events which, but for the continuation coverage required under this part, would result in the loss of coverage of a qualified beneficiary:

\* \* \* \* \* \*

(3) The divorce or legal separation of the covered employee from the employee's spouse.

29 U.S.C. § 1163(3). The election period is the period of time within which the qualified beneficiary must decide to accept or decline coverage under the plan. This period begins on the date on which coverage terminates by reason of a "qualifying event" and lasts at least 60 days, ending, in the case of a qualified beneficiary who receives notice under 29 U.S.C. § 1166(a)(4), no earlier than 60 days after the date that the required notice is given. 29 U.S.C. § 1165(1)(C)(ii).

Providing appropriate notice is a key requirement under COBRA. 29 U.S.C. § 1166 defines the two separate notice responsibilities which the parties must perform. Under 29 U.S.C. § 1166(a)(1), covered employees and their spouses must be given notice of their rights under COBRA at the time COBRA coverage attaches to their plan. The second round of notice-giving commences at the time of a qualifying event. Under 29 U.S.C. § 1166(a)(3), if a divorce is the qualifying event, either the covered employee or the qualified beneficiary is responsible for notifying the administrator of its occurrence. If the notice of divorce is given by the covered employee, the administrator must notify any qualified beneficiary of such beneficiary's rights under the Act. 29 U.S.C. § 1166(a)(4)(B). The notice from the administrator to the qualified beneficiary must occur within 14 days of the date on which the administrator is notified of the qualifying event. 29 U.S.C. § 1166(c). If the administrator fails

to provide that notice to the qualified beneficiary, it may be bound to provide coverage to her.

Delores and Roy Phillips were divorced on December 9, 1987. Under 29 U.S.C. § 1163(3), this divorce is a qualifying event. As the spouse of a covered employee at the time of the divorce, Delores Phillips is a qualified beneficiary under 29 U.S.C. § 1167(3)(A)(i), and therefore is entitled to elect COBRA continuation coverage. Under the provisions of COBRA, Delores Phillips's election period began on December 31, 1987, the date on which she would lose coverage under Roy Phillips's health plan. 29 U.S.C. § 1165(1)(A). As of that date, Delores Phillips would have at least 60 days to determine whether or not she wanted COBRA continuation coverage through her ex-husband's employer.

■ The central issue is whether Delores Phillips was provided with proper notice of her rights under COBRA. There is not much dispute that Blue Cross complied with the first notice provision of COBRA. Under 29 U.S.C. § 1166(a)(1), Blue Cross was required to provide covered employees and their spouses with notice of their rights under COBRA at the time the statute attached to their plan. Blue Cross asserts, and the hospital does not seem to dispute, that this notice was provided to Roy Phillips in the fall of 1986. Assuming that at the same time notice was also given to Delores Phillips—and no one claims that it was not so provided—this notice is sufficient to inform Delores Phillips of the effects of COBRA on her health plan. See, e.g., *Dehner v. Kansas City Southern Industries, Inc.*, 713 F.Supp. 1397, 1399–1400 (D.Kan.1989) (holding COBRA notice adequate when mailed to an employee with an additional set of instructions included for him to pass to his wife). Thus, the actions taken by Blue Cross in initially apprising the Phillipses of the effects of COBRA satisfied its statutory obligation.

Although a much closer question, we find that Blue Cross's mailing of the identification card, benefits information, and premium statement to Delores Phillips satisfied the second notice requirement of CO-

BRA. Under COBRA, if the notice of the divorce is given to the employer by the covered employee, the plan administrator is required to provide the qualified beneficiary with notice of her rights to continue coverage. 29 U.S.C. § 1166(a)(4)(B). When Roy Phillips notified his employer of the divorce, his employer gave him a COBRA notice form to deliver to his wife. Instead of giving the form to his ex-wife, however, Roy Phillips, knowing that she was in a coma, executed the notice on her behalf. He elected COBRA continuation coverage for her and tendered one month's premium. This information was then forwarded to Blue Cross, which opened a COBRA continuation file for Delores Phillips. No further payments were tendered by Roy Phillips, and no formal COBRA notice was sent to Delores Phillips.

Blue Cross did, however, mail the identification card, the premium statement, and the benefits information to Delores Phillips on February 15, 1988. This occurred within the 14–day window permitted by 29 U.S.C. § 1166(c).[3] We hold that these documents sufficiently met Blue Cross's COBRA obligation to give notice to a qualified beneficiary. This information adequately informed her of the coverage she was entitled to receive and the money that she owed in order to maintain this coverage. More importantly, the actions of her ex-husband guaranteed that COBRA coverage was available to her. It is not disputed that Delores Phillips would have elected COBRA continuation coverage if she had been able to. By electing coverage for her, Roy Phillips ensured that this was done. His decision to elect coverage for her was

relayed to Blue Cross. The information which Blue Cross mailed to Mrs. Phillips informed her that coverage was being provided and that she needed to submit $134.92 to continue this coverage. Unfortunately, this was never done, and Delores Phillips's coverage lapsed.

■ In short, Blue Cross, the plan administrator, met its obligations under COBRA. It received an election notice executed on behalf of Delores Phillips and established coverage for her. It also forwarded benefits and billing information indicating that she needed to pay an additional $134.92 to guarantee her coverage through the month of March. This was adequate notice under COBRA, given the fact that an election had already been made, and coverage was already being provided. While it is unfortunate that Mrs. Phillips's coverage lapsed in this case, Blue Cross cannot be held responsible for this misfortune. Blue Cross did everything that was required of it under COBRA.[4]

We are mindful of the recent decision in *Meadows v. Cagle's, Inc.*, 954 F.2d 686 (11th Cir.1992). There, the insurer gave notice of COBRA continuation rights, but the notice did not include official plan documents explaining benefits thoroughly enough to enable an intelligent decision whether to elect continuation coverage. As a result, coverage was waived in circumstances where it probably would not have been if full information had been provided. The Eleventh Circuit held the waiver void. The kind of notice given did not comply with the statute. Our decision in the present case is fully consistent with

---

**3.** Although the hospital denies that this notice was ever received, the District Court held that there was no evidence to contradict the affidavit of Tom Broderick, a manager in the Accounts Receivable department of Blue Cross, which stated that this information was sent to Delores Phillips's home. We agree. Mrs. Phillips, of course, had become unable to receive mail, but there is no evidence that Blue Cross knew this. It was her guardian's duty to receive her mail and act upon it if necessary.

**4.** The hospital argues that the time limit on a qualified beneficiary's election should be extended because Mrs. Phillips became incapacitated during her election period, citing *Sirkin v.*

*Phillips Colleges, Inc.*, 779 F.Supp. 751 (D.N.J. 1991). This case, along with *Branch v. G. Bernd Co.*, 764 F.Supp. 1527 (M.D.Ga.1991), aff'd, 955 F.2d 1574 (11th Cir.1992), holds that the election period is tolled to protect the interests of an incompetent during the period of her incapacity. In each of these cases, however, that tolling was ended as soon as a personal representative had been appointed. In the present case, a personal representative was appointed on February 3, 1988, and a successor in March. Thus, if the election period was tolled at all, the tolling ceased and the period began to run again on February 3, when a guardian was appointed.

this reasoning. The hospital has not argued that official plan documents were not provided, nor that they contained any information that would have helped Mr. Phillips make the election decision. He in fact elected coverage. The problem arose because Mr. Phillips evidently did not realize that more than one month's premium needed to be paid to maintain coverage after January 31, 1988. This lack of knowledge was remedied by the materials the company sent to Mrs. Phillips on February 15.

## III.

■ In the alternative, the hospital argues that Blue Cross is equitably estopped to deny that Delores Phillips had coverage. The hospital relies on the fact that when it called Blue Cross to inquire whether Mrs. Phillips was covered, Azalia Jackson, a Blue Cross employee, said yes. Ms. Jackson did not say that coverage was in jeopardy, in the sense that premiums were overdue, and that coverage would lapse shortly after the first of March if the premiums were not paid. This omission, the hospital says, was a fatal misrepresentation on which it relied to its detriment. The hospital also argues that Ms. Jackson realized that she had given it the wrong information, and that she failed to correct the error.

■ In general, the doctrine of equitable estoppel "requires proof of words or deeds (or sometimes omissions to speak or act) that create a misleading impression upon which a reasonable person would rely." *Dyna–Tel, Inc. v. Lakewood Engineering & Mfg. Co.*, 946 F.2d 539, 543 (7th Cir.1991) (Posner, J.). See also *Total Petroleum, Inc. v. Davis*, 822 F.2d 734, 737 (8th Cir. 1987); *National Companies Health Benefit Plan v. St. Joseph's Hospital of Atlanta, Inc.*, 929 F.2d 1558, 1572 (11th Cir. 1991). In the present case, the duty not to mislead is heightened by the fact that Blue Cross was the plan administrator, and hence stood in a fiduciary relationship with respect to plan members, including family members with hold-over coverage. On the other hand, the representation was not made to Mrs. Phillips directly, but rather to the hospital, an entity whose sophistication in health-coverage matters was probably equal to that of Blue Cross.

After balancing the arguments on both sides of the estoppel question, we hold for Blue Cross. There was of course no actual misstatement of fact. The information that Azalia Jackson provided to the hospital on February 15, 1988, that is, that Delores Phillips had coverage at the time, was true. She would remain covered until at least March 3, 1988, when the grace period for overdue premiums would expire. She had seventeen days left within which she could have paid her outstanding premium balance. Blue Cross did not know Mrs. Phillips was in a coma, though the hospital of course did know it. The hospital could have inquired about the status of premium payment, and perhaps it should have done so, in view of the patient's personal incapacity, but the particular inquiry that would or should have elicited the information that premiums were overdue was not made. By the same token, Blue Cross could have told the hospital that premiums were overdue. It did not do so, and perhaps this information could have been provided without excessive inconvenience or extra cost, but Ms. Jackson, the employee who answered the hospital's call, had no actual personal knowledge of the premium status of Mrs. Phillips's insurance, and there is no evidence to support the hospital's assertion that Ms. Jackson could have accessed (pardon this barbarism: we use it only because it seems to be well understood by those who use and know about computers) the premium information on the same screen that showed that Mrs. Phillips was covered.

The equities seem pretty evenly balanced. What tips the case in favor of Blue Cross, in our view, is that accurate premium information was actually sent to the patient on the very day of the telephone call from the hospital to Ms. Jackson. True, the patient was not able to receive and act on the information, but, to repeat, Blue Cross did not know this, and a personal representative with responsibility to act in the patient's behalf had been appointed.

If this representative had collected Mrs. Phillips's mail, the premiums could have been paid by the hospital itself, by way of an advance, if in no other fashion. Indeed, when someone is appointed a personal representative for an incapacitated patient, whether insurance coverage exists and is in good standing should be one of the first things attended to. In short, Blue Cross did not do everything it could have done, but we think it did enough to satisfy its duty to Mrs. Phillips. The hospital, as her assignee, can stand in no better position. Remember that the hospital could have protected itself by making more pointed inquiries of Ms. Jackson or some other Blue Cross employee. We observe, finally, that no evidence in this record supports the hospital's contention that Ms. Jackson later realized her omission and failed to correct it.

### IV.

■ The hospital's remaining claims require little discussion. The evidence fails to show that Blue Cross administered the Plan in an arbitrary and capricious manner. Additionally, Blue Cross did not waive its right to apply the first premium retroactively. The evidence did not show that Blue Cross customarily allowed plan participants to defer their payments. Moreover, the regular practice under COBRA is to apply the initial premium retroactively to cover the participant from the date he would lose coverage. See 52 Fed.Reg. 22,-731 (1987), proposed 26 C.F.R. § 1.162.26 at Q & A 47.

The judgment of the District Court is affirmed.