834 F.Supp. 1205 (1993)
STATE OF NEBRASKA, ex rel. E. Benjamin NELSON, Governor, Plaintiff,
v.
CENTRAL INTERSTATE LOW-LEVEL RADIOACTIVE WASTE COMMISSION, and US Ecology, Inc., a California corporation, Defendants.
No. 4:CV93-3042.
United States District Court, D. Nebraska.
October 8, 1993.
*1206 Linda Willard, Asst. Atty. Gen., Lincoln, NE, for plaintiff.
Alan E. Peterson, Cline, Williams, Wright, Johnson & Oldfather, Lincoln, NE, for defendant Cent. Interstate Low-Level Radioactive Waste Com'n.
*1207 Steven G. Seglin, Crosby, Guenzel, Davis, Kessner & Kuester, Lincoln, NE, for defendant US Ecology, Inc.

MEMORANDUM AND ORDER
KOPF, District Judge.
Pending before me are Defendants' motions seeking summary judgment (Filings 29 and 30). After considering the briefs and evidence of the parties and hearing their oral arguments, I shall grant the motions for summary judgment, finding that (1) this action is time barred by the applicable limitations period, and (2) even if this action were not time barred by the applicable limitations period, it would be barred by the equitable doctrines of estoppel and laches.

I.

A.
This is another in a series of lawsuits regarding efforts to stop development of a regional low-level radioactive waste disposal facility. See, e.g., Concerned Citizens of Neb. v. United States Nuclear Regulatory Comm'n, 970 F.2d 421 (8th Cir.1992) (affirming in relevant part the decision of the United States District Court for the District of Nebraska dismissing a complaint by an unincorporated, nonprofit citizens' organization and four of its members seeking to stop development of a regional low-level radioactive waste disposal facility). Speaking for the United States Court of Appeals for the Eighth Circuit in Concerned Citizens of Neb., Judge Beam aptly summarized the background of this case as well:
In 1980, Congress enacted the Low-Level Radioactive Waste Policy Act (LLRW Act), Pub.L. No. 96-573, 94 Stat. 3347 (1980) (amended 1986), to promote the development of regional low-level radioactive waste disposal facilities. Pursuant to the LLRW Act, Nebraska and four other states entered the Central Interstate Low-Level Radioactive Waste Compact (Compact) and requested congressional approval of the Compact. In 1986, Congress approved the Compact under the Omnibus Low-Level Radioactive Waste Interstate Compact Consent Act, Pub.L. No. 99-240, tit. II, sec. 222, 99 Stat. 1859, 1863 (1986). At the same time, Congress amended the LLRW Act by enacting the Low-Level Radioactive Waste Policy Amendments Act of 1985 (LLRW Amendments), Pub.L. No. 99-240, tit. I, 99 Stat. 1842 (1986) (codified at 42 U.S.C. §§ 2021b-2021j (1988)).
The Compact established the Central Interstate Low-Level Radioactive Waste Compact Commission (Compact Commission) as its governing body. The Compact Commission designated Nebraska as the host state for the disposal facility and selected Boyd County as the facility's site. The Compact Commission contracted with US Ecology, Inc., a private corporation, to develop and operate the facility.
Id. at 422-23 (footnote omitted).
The Compact of which Nebraska is a member contains two provisions especially material to this opinion.[1] Article IV, paragraph (l), of the Compact provides that:
Any person or party state aggrieved by a final decision of the commission may obtain judicial review of such decisions in the United States District Court in the district wherein the commission maintains its headquarters by filing in such court a petition for review within sixty days after the commission's final decision. Proceedings thereafter shall be in accordance with the rules of procedure applicable in such court.
The Compact also provides for an extensive site selection process. Art. V. §§ (c), (d), (e) & (f). A site selection by the Commission "shall become final and receive the commission's approval as a regional facility upon the issuance of a license by the licensing authority." Art. V § (f).
The site selected by the Commission is the Boyd County site (sometimes called the Butte site). See Concerned Citizens of Nebraska, 970 F.2d at 423. The Boyd County facility is currently awaiting a license from *1208 the Nebraska Department of Environmental Quality (previously known as the Department of Environmental Control). Id.

B.

1.
This case was filed January 13, 1993. (Filing 1 Compl.) The amended complaint, filed January 26, 1993, (Filing 3), indicates this case seeks declaratory and injunctive relief and requests a finding that the Central Interstate Low-Level Radioactive Waste Commission (Commission) and the developer, US Ecology, Inc. (US Ecology) have failed to obtain "community consent," thereby violating a resolution passed and adopted by the Commission, and violating the Low-Level Radioactive Waste Disposal Act adopted by the State of Nebraska to implement the Compact.
The Low-Level Radioactive Waste Disposal Act, Neb.Rev.Stat. § 81-1578, et seq. (1992 Cum.Supp.), stated it was the intent of the Nebraska legislature that to the extent possible "the developer shall make every effort to locate the facility where community support is evident." Id. at Neb.Rev.Stat. § 81-1579(3). It has long been the law that one member state in a compact cannot unilaterally nullify the provisions of a compact or give final meaning to the terms of a compact. West Virginia ex rel. Dyer v. Sims, 341 U.S. 22, 28, 71 S.Ct. 557, 560, 95 L.Ed. 713 (1951).
I do not understand Plaintiff to contend that the Low-Level Radioactive Waste Disposal Act added a condition to the Compact or otherwise defined a term that was not agreed upon by the Compact Commission when the Commission passed the alleged resolution agreeing to community consent. Therefore, Nebraska law has no particular independent significance in this lawsuit.

2.
There are no material facts in dispute. I further find that the following are uncontroverted facts for purposes of the motions for summary judgment in this case:
1. Arkansas, Kansas, Louisiana, Nebraska and Oklahoma are members of the Compact. (Filing 3 Am.Compl. ¶ 5.)
2. The Compact was formed under authority of federal statute, and Congress has consented to the Compact. (Filing 3 Am. Compl. ¶ 5.)
3. US Ecology is the developer of the low-level radioactive waste disposal facility contemplated by the Compact. (Filing 3 Am. Compl. ¶ 6.)
4. Nebraska is the host state for the regional disposal facility contemplated by the Compact. (Filing 3 Am.Compl. ¶ 9.)
5. In late 1987, Nebraska's then governor, Kay A. Orr, proposed conditions for the proposed disposal facility for adoption by the Commission. Such conditions, including one relating to "community consent," were adopted by the Commission, subject to certain qualifications. (Ex. 2 attach. B; Ex. 3 attach. B.)
6. In 1988, the Nebraska legislature enacted the following explanation or definition of the community-consent concept:
It is the intent of the legislature that potential host communities be actively and voluntarily involved in the siting process. To the extent possible, consistent with the highest level of protection for the health and safety of the citizens of the state and protection of the environment, the developer shall make every effort to locate the facility where community support is evident.
Neb.Rev.Stat. § 81-1579(3) (Cum.Supp.1992).
7. The Nebraska legislature has repeatedly and consistently refused to enact any law requiring or authorizing a vote of any kind as a measure of the community-consent concept. (Ex. 9.)
8. Governor Orr explicitly rejected the idea that community consent should be determined by some form of local vote. (Ex. 3 ¶ 18 & attachs.)
9. There is no legal authority under Nebraska law for a governor to order, implement, or agree to any form of legally binding vote of the kind allegedly conducted by the Boyd County Local Monitoring Committee alleged in paragraphs 22 and 23 of the amended complaint. (Ex. 7.)
*1209 10. Throughout 1988 and 1989, US Ecology made extensive efforts to solicit community support for the proposed facility in a variety of communities in Nebraska. (Exs. 4, 5, 15 & 16.)
11. The community of Butte, Nebraska, in Boyd County, Nebraska, invited US Ecology to investigate the geology in the surrounding area to determine if the disposal facility could be located there. The Village Board of Butte, Nebraska, has consistently expressed support for the proposed facility, with the most recent official expression of support by the community of Butte, Nebraska, occurring at about the time this lawsuit was filed by Nebraska. (Ex. 1 & attachs.)
12. The site near Butte, Nebraska, was selected as the final site for construction of the proposed regional disposal facility in late 1989, and Nebraska was officially notified of that site selection by both the Commission and US Ecology in February, 1990. (Ex. 2 & attachs.; Ex. 3 & attachs.; Ex. 10; Ex. 15.)
13. US Ecology submitted a license application for the Butte, Nebraska, site on July 27, 1990. (Filing 3 Am.Compl. ¶ 21.)
14. Both before and after submission of the license application by US Ecology, Governor Orr made and authorized various public statements indicating that the community-consent factor had been specifically met as to the Butte, Nebraska, site. (Ex. 2 ¶ 16 & attach. C; Ex. 3 ¶ 18 & attachs.)
15. Between March, 1990, and the present date, the Commission has spent or authorized the expenditure of more than 33 million dollars in furtherance of the proposed disposal facility and of that amount, more than 8 million dollars has been paid to the State of Nebraska, mostly for license application review purposes. (Ex. 1 ¶¶ 3 & 4.)
16. On about December 7, 1990, then governor-elect Nelson was notified in an extensive legal memorandum signed by the executive director and general counsel of the Commission and by the Commission's outside legal counsel that: "the Compact Commission has concluded and firmly believes that all legal requirements relative to community consent have been met or exceeded. The form of consent made relevant to the site selection process is one fixed at a point in time which has now passed." (Ex. 15, at 1.)[2]
The foregoing uncontroverted facts are derived from Defendants' briefs, and are essentially accepted by Plaintiff. Plaintiff's brief states:
The Plaintiff accepts the Defendants' Statement of Facts with the following exceptions:
1. (Paragraph 6) In 1988, the Nebraska Legislature enacted the quoted paragraph as a part of Neb.Rev.Stat. § 81-1579(3) (Cum.Supp.1992). However, the quoted language neither purports to be nor is it an explanation or definition of "community consent."
2. (Paragraph 9) Governor Nelson did not order, implement, or agree to a legally binding vote in Boyd County concerning Community Consent as stated by Defendants. An unofficial poll was held in a method approximating election laws as much as possible based on advice given by Secretary of State Allen J. Beermann to Steven J. Moeller of the Governor's Policy Research Office and Loran Sieh of the Boyd County Local Monitoring Committee (Ex. SJ 1, Moeller Affidavit). Governor Nelson never instructed the Boyd County Local Monitoring Committee or anyone else to conduct a poll on the issue of community consent although he did discuss methods of determining community consent with members of the Local Monitoring Committee.
3. (Paragraph 10) During 1988, US Ecology presented numerous programs to community groups and wrote to numerous governmental subdivisions seeking expressions of interest from counties, cities, towns, and/or villages to determine if an area was environmentally suitable for a facility. Oral presentations and letters to governmental subdivisions clearly stated that "Acceptance of a formal expression of interest does not constitute a commitment to accept the facility, only to becoming *1210 involved in preliminary studies" (Ex. SJ 2, Letter of Rich Paton; Ex. SJ 3, Sieh Affidavit).
4. (Paragraph 12) The Defendants, Compact Commission and US Ecology, informed the State of Nebraska in February, 1992, [sic] that a site near Butte in Boyd County, Nebraska, was the preferred site for construction of a low-level radioactive storage facility. The Defendants did not indicate how or when they would measure community consent for the proposed site. Plaintiff is unaware and there appears to be no evidence of when, before or during the siting process, US Ecology selected the Boyd County site.
(Pl.'s Br. at 1-2.)
Thus, except as qualified by Plaintiff, Plaintiff agreed to the statement of uncontroverted facts set forth by Defendants which I have in substance recounted. The qualifications of Plaintiff stated in the aforementioned paragraphs 1-3 of its brief are not material to my decision. The qualification set forth in paragraph 4 is not supported by any citation to evidence, and therefore should be disregarded under Federal Rule of Civil Procedure 56(e) and Nebraska Local Rule of Practice 56.1(b). Even had I considered the qualification, however, no material fact would be in dispute.

II.

A.
Jurisdiction in this case is asserted under 28 U.S.C. § 1332(a) and 28 U.S.C. § 1331. This court does not have "diversity" jurisdiction under 28 U.S.C. § 1332(a) for the reason that a state is not a "citizen" for the purposes of the diversity statute. Moor v. County of Alameda, 411 U.S. 693, 717, 93 S.Ct. 1785, 1799, 36 L.Ed.2d 596 (1973).
This court does, however, have federal-question jurisdiction under 28 U.S.C. § 1331. Although the Supreme Court has not squarely held that construction of an interstate compact presents a federal question under § 1331, the Court has used language that probably compels such a result.
In Cuyler v. Adams, 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981), the Court held that the Interstate Agreement on Detainers is a congressionally sanctioned interstate compact, the interpretation of which presents a question of federal law. Id. at 438-42, 101 S.Ct. at 706-09. Article I, Section 10, Clause 3 of the Constitution, the Compact Clause, provides that: "No State shall, without the Consent of the Congress, ... enter into any Agreement or Compact with another state...." The Supreme Court stated that because "congressional consent transforms an interstate compact within this Clause into a law of the United States, we have held that construction of an interstate agreement sanctioned by Congress under the Compact Clause presents a federal question." Id. at 438, 101 S.Ct. at 706 (citations omitted). Inasmuch as I believe that a construction of the provisions of Article IV and Article V of the Central Interstate Low-Level Radioactive Waste Compact is inextricably interwoven with any resolution of Plaintiff's claims, I conclude that federal-question jurisdiction has been established.
Defendants have argued that the Amended Complaint, as well as the documents submitted in support of and in opposition to the motions for summary judgment, fail to establish any of the three elements of constitutionally required standing under Article III of the Constitution: (1) injury in fact; (2) causation; or (3) redressability. Lujan v. Defenders of Wildlife, ___ U.S. ___, ___, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). However, I believe this is one of the unusual cases where parens patriae standing exists. See Alfred L. Snapp & Son, Inc. v. Puerto Rico, 458 U.S. 592, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982).
When the Amended Complaint is viewed in its entirety and given a liberal construction, it is apparent that the State of Nebraska is alleging that the residents of Boyd County, Nebraska, and the State of Nebraska, as a member of the Compact, will be forced to accept low-level radioactive waste to the detriment of the health and welfare of residents of Boyd County, Nebraska, and the sovereignty of the State of Nebraska, and that such a threat is real and now present. Accordingly, *1211 although parens patriae standing is not demonstrated with the clarity I would prefer, I believe the showing which has been made is sufficient, if only minimally so.

B.
I turn now to the substantive arguments raised by Defendants which I believe have merit and independently warrant summary judgment.[3] First, I conclude that this action is time barred under the sixty-day limitation period specified in the Compact. Second, I conclude that the equitable doctrines of estoppel and laches bar the relief sought by Plaintiff.

1.
Article IV(l) of the Compact contains a provision that a "party state aggrieved by a final decision of the commission may obtain judicial review of such decisions in the United States District Court in the district wherein the commission maintains its headquarters by filing in such court a petition for review within sixty days after the commission's final decision." (emphasis added.) Such a provision is not unusual. For example, the Tahoe Regional Planning Compact, approved by Congress in 1969, contains a similar sixty-day provision. Federal courts have enforced such sixty-day limitation periods. See, e.g., Tahoe Sierra Preservation Council v. Tahoe Regional Planning Agency, 808 F.Supp. 1474, 1482 (D.Nev.1992) (property owners' taking claims were time barred by the sixty-day statute of limitations set forth in the Tahoe Regional Planning Compact).
The State of Nebraska does not contend that the sixty-day limitation period is unconstitutional. I therefore assume for purposes of the motions for summary judgment that the sixty-day period is constitutional, and proceed to determine whether or not this action is time barred.[4]
On February 6, 1990, Norman W. Thorson, then chairman of the Commission, wrote every member of the Nebraska legislature about the selection of the Butte site. His letter stated: "So that there will be no possible misunderstanding of the Commission's or the Developer's intentions, the Commission has directed US Ecology to file a Notice of Final Selection with the clerk of the legislature, which notice will clearly identify the Butte site as the only site under consideration." (Ex. 2 ¶ 17 & attach. D at 2.) A copy of that correspondence was mailed to Governor Orr, the Compact commissioners and the Compact's executive director. (Id.)
In a document entitled "Notice of Final Selection," dated February 14, 1990, US Ecology notified the clerk of the Nebraska legislature that:
[a]t the direction of the Central Interstate Low-Level Radioactive Waste Compact Commission (per its letter of February 6, 1990), US Ecology hereby formally provides notice to the Nebraska Unicameral that the selection of the Butte site is the *1212 final site selected for license application. The Butte site is the only site for which a license document will be prepared.... I trust that this Notice of Final Selection clearly sets forth US Ecology's intent and resolves any remaining questions concerning the finality of the Butte site selection decision.

(Ex. 10 (emphasis added).)
Furthermore, on about December 7, 1990, the Commission provided Governor-elect E. Benjamin Nelson with a comprehensive memorandum on the community-consent issue. (Ex. 15.) In an extremely detailed, specific and blunt discussion of the legal requirements of "community consent," the Commission, through its general counsel, executive director and outside legal counsel, specifically notified the governor-elect that:
The Compact Commission has concluded and firmly believes that all legal requirements relative to community consent have been met or exceeded. The form of consent made relevant to the site selection process is one fixed at a point in time which has now passed. The standard set has been respected and met. Any new imposition of further requirements would be unfair and legally dangerous.
(Ex. 15, at 1.)
The Commission concluded by stating, "the position of the Compact, therefore, in view of all of the foregoing legal and factual circumstances, is that the requirement by the State of Nebraska that community support be sought by the developer has been met." (Ex. 15, at 15.)
I must determine whether there was a "final decision" by the Commission.[5] The State has not controverted the specific sworn statement of Norman W. Thorson that "in my capacity as chairman of the Commission, I wrote to each member of Nebraska's legislature indicating that the selection of the Boyd County site was final...." (Ex. 2 ¶ 17, at 6.) Thorson, who is a licensed attorney and the Judge Harry A. Spencer Professor of Law at the University of Nebraska College of Law, served the Commission as its chairman and as Nebraska's representative to the Commission. Thus, there is simply no basis in fact for concluding that the Commission had not selected the Butte site as its final site.
In fact, the State of Nebraska was given specific written notice in February, 1990, by US Ecology at the direction of Thorson, that the Butte site was the final one. This notice was provided to every member of the legislature and the governor of the State of Nebraska by means of a formal "Notice of Final Selection" furnished to the clerk of the Nebraska legislature, specifically stating that the "selection of the Butte site is the final site selected for license application" and the Butte site "is the only site for which a license document will be prepared." (Ex. 10.) In my judgment, this notice, provided in February, 1990, caused the sixty-day limitation period to begin to run as it constituted a final decision by the Commission.
While the question of what constitutes a "final decision" can be vexing, see, e.g., 4 Kenneth Culp Davis, Administrative *1213 Law Treatise § 26.10 (1983), this case is not difficult. Generally speaking, a decision, such as the one at issue here, is final when any one of three factors is present: (1) the ruling is definitive, (2) the ruling has legal force or impacts the party seeking relief in a practical way, or (3) review of the ruling would serve efficiency or enforcement of the underlying law. Fed. Trade Comm'n v. Standard Oil Co. of Cal., 449 U.S. 232, 243, 101 S.Ct. 488, 495, 66 L.Ed.2d 416 (1980).
The ruling in this case is definitive. There is no longer any discretion left for the Commission to exercise. Upon issuance of the license by the State of Nebraska, the facility becomes the approved regional facility.
The ruling has legal force because at the very least the decision authorizes the developer to pursue a license. Moreover, the ruling has a practical and a legal impact upon the State of Nebraska because the State of Nebraska, the party seeking review, is required by the Compact to timely consider the license application authorized by the Commission. Art. V § (e)(2).
Still further, a timely review of the site selection decision would have been an efficient procedure that would have furthered the interests of all members of the Compact. Had the State of Nebraska timely asserted its objection to the site selection decision, such a review could have been conducted before the Commission spent over 33 million dollars pursuing a license.
But the State of Nebraska contends that it is unable to locate any evidence that the Compact Commission formally made a decision that "community consent" had been achieved. Thus, the State argues that it had no notice that a decision had been made regarding community consent because there is no evidence that the Commission formally considered the issue of "community consent." This argument misses the mark for two reasons.
Initially, there is no legal basis under the Compact or otherwise[6] for concluding that the Compact Commission was required to separately and independently decide that community consent had been achieved. See Art. V. Once the Compact Commission and US Ecology had made their "final site selection," this obviously involved making all the decisions necessary to reach such a conclusion. Without a legal requirement that the Compact Commission specifically determine the existence of "community consent," there is no basis for challenging the lack of a specific finding.
Moreover, once Governor Kay Orr, the originator of the concept of "community consent," specifically found that community consent existed, there was nothing for the Commission to decide. (Ex. 3 ¶¶ 16, 18.) There simply was no reason for the Commission to think that it was required to make elaborate findings on "community consent" when the person who demanded utilization of the concept in the first place was satisfied that the condition had been met.
Finally, I conclude that assertion of this relatively short period of limitations against the State of Nebraska is not unfair. If Governor Nelson had any question about what position the Compact and US Ecology were taking on the issue of "community consent," such doubt would clearly have been resolved when the governor was served with an extensive legal memorandum explicitly and bluntly setting forth the Commission's position. Governor Nelson does not dispute that he was served with an extensive legal memorandum, sixteen pages in length, together with attachments totaling hundreds of pages.
That specific legal document stated that the "Compact Commission has concluded and firmly believes that all legal requirements relative to community consent have been met or exceeded." (Ex. 15, at 1.) Therefore, it is not unfair to assert the statute of limitations against Nebraska inasmuch as Governor Nelson was given specific notice in his capacity as governor-elect that the Commission and the developer believed community consent had been established, and the Commission and the developer were proceeding on that *1214 assumption. Notwithstanding this explicit and blunt notice, Governor Nelson did not cause this suit to be commenced until January, 1993, more than two years after he was specifically notified of the position of the Compact Commission and the developer.
In summary, I conclude that when the formal "Notice of Final Selection" was delivered to the clerk of the Nebraska legislature in February, 1990, the sixty-day statute of limitations began to run against the State of Nebraska. I further conclude that it is not unfair to assert this relatively short statute of limitations against the State of Nebraska under the present circumstances because the governor of the state received specific notice of the position of the Compact Commission and the developer and yet waited more than two years thereafter before instituting suit. Accordingly, the motion for summary judgment will be granted, with the court finding and concluding that this action is time barred by the sixty-day limitation period set forth in the Compact.

2.
The Commission and US Ecology further argue that Plaintiff is not entitled to the equitable relief it seeks because such relief is barred by the doctrines of estoppel and laches. I agree.
Three things are particularly pertinent. Governor Orr, who originated the concept of "community consent," has frequently and consistently stated that "community consent" has been satisfied. (Ex. 3 ¶¶ 16, 18 & attach. A.) Governor Nelson, by virtue of his receipt of exhibit 15, was specifically notified that the Compact Commission and US Ecology believed that "community consent" had been achieved and there was no further legal requirement to be satisfied with regard to community consent. Lastly, after the notice of final site selection was delivered to the Nebraska legislature, the Compact Commission spent 33 million dollars, including 8 million dollars paid to the State of Nebraska, in order to pursue licensing of its final site selection in Boyd County, Nebraska. Under the circumstances, it would be grossly inequitable to permit the State of Nebraska to challenge the actions of the Compact Commission and the developer at this late date.
Two related legal theories apply in this case. Those are the doctrines of equitable estoppel and laches. See, e.g., Bostwick Irrigation Dist. v. United States, 900 F.2d 1285, 1291-92 (8th Cir.1990).
The doctrine of equitable estoppel "`requires proof of words or deeds (or sometimes omissions to speak or act) that create a misleading impression upon which a reasonable person would rely.'" Lincoln Gen. Hosp. v. Blue Cross/Blue Shield, 963 F.2d 1136, 1141 (8th Cir.1992) (quoting Dyna-Tel, Inc. v. Lakewood Eng'g & Mfg. Co., 946 F.2d 539, 543 (7th Cir.1991) (Posner, J.)). Generally speaking, there are three elements to equitable estoppel: (1) a party must make a misrepresentation or take an action with reason to believe the other party will rely upon it; (2) the second party must not have access to the truth; and (3) the second party must rely upon the first party's action to its detriment. Bostwick Irrigation Dist., 900 F.2d at 1291. I believe all three elements exist here.
First, the Office of the Governor of the State of Nebraska (regardless of who occupied that office) made specific and repeated public statements that "community consent" had been achieved. In fact, the person making those statements (Governor Orr) originated the "community-consent" concept.
For example, during the fall of 1990, Boyd County resident Lowell Fisher went on a hunger strike in protest against the Butte site. Governor Orr's office received many letters urging her to order a vote of Boyd County residents to determine whether or not community consent for the proposed facility existed. Governor Orr declined to do so, and the governor's office generated a form letter which was sent out in response to the many letters received. The October, 1990, form letter, mailed to approximately seventy-five people, stated in pertinent part:
Unfortunately, what Lowell was requesting from me is not in my power to deliver. A governor has absolutely no constitutional or statutory authority to call an election of any sort. When announcing the condition of community consent it was specifically stated that a local referendum was not anticipated. Rather, community consent *1215 would be manifest through the actions of locally elected officials. The closest consolidated community to the site is Butte. The Butte Town Board has had in place, and continues to have, a resolution which supports and invites the facility.
(Ex. 3 Orr Aff. ¶ 16.)
Second, it is clear that Defendants did "not have access to the truth." Bostwick Irrigation Dist., 900 F.2d at 1291. In this case, Plaintiff asserts the "truth" is that the residents of Boyd County, Nebraska, would not vote to have the storage facility located in their county. As proof of this assertion, Plaintiff alleges that a "poll" of Boyd County residents was conducted. (Filing 3 Am. Compl. ¶¶ 22, 23.) However, it is an undisputed fact that there is no provision under Nebraska law to allow the holding of such an election or referendum. Therefore, there was no way in which Defendants could ascertain the "truth," assuming the "truth" were to be defined in the manner proposed by Plaintiff.
Finally, there is no question that Defendants have suffered harm by relying upon the statements and representations of the governor's office, to their detriment. Defendants have authorized the expenditure of some 33 million dollars since March, 1990, eight million dollars of which has been paid directly to the State of Nebraska. It is inconceivable that Defendants would have proceeded to spend 33 million dollars but for their justifiable reliance on the statements made publicly by the governor's office.
The State of Nebraska argues that Defendants have "no justification for relying on an assertion of any single individual...." (Pl.'s Br. at 24.) The "single individual" that the State of Nebraska apparently refers to is Governor Orr. This argument, charitably, is nonsense.
Defendants did not rely on a single individual. Defendants relied upon the Governor of the State of Nebraska. Clearly she had the legal authority to speak for the State of Nebraska, just as Governor Nelson has the legal authority to bring this suit. Moreover, Defendants' reliance was particularly justified because Governor Orr originated the concept of community consent.
I therefore conclude that all the elements of equitable estoppel have been established in this case.
In this connection, I believe the words of Justice Jackson in West Virginia ex rel. Dyer v. Sims, 341 U.S. at 35-36, 71 S.Ct. at 564, are apropos. In that case, the West Virginia courts held, after West Virginia had entered into an interstate compact, that the Constitution of the State of West Virginia barred the State from participating in the interstate compact. The United States Supreme Court unanimously reversed the holding of the West Virginia court. In a concurring opinion, Justice Jackson wrote the following passage which is particularly relevant here:
West Virginia points to no provision of her Constitution which we can say was clear notice or fair warning to Congress or other states of any defect in her authority to enter into this compact. It is a power inherent in sovereignty limited only to the extent that congressional consent is required. (Citations omitted.) Whatever she now says her Constitution means, she may not apply retroactively that interpretation to place an unforeseeable construction upon what the other states to this compact were entitled to believe was a fully authorized act.

Estoppel is not often to be invoked against a government. But West Virginia assumed a contractual obligation with equals by permission of another government that is sovereign in the field. After Congress and sister states had been induced to alter their positions and bind themselves to terms of a covenant, West Virginia should be estopped from repudiating her act.

Id. at 35-36, 71 S.Ct. at 564 (emphasis added).
I turn next to the related doctrine of laches. As the court said in Bostwick Irrigation Dist., the "doctrine of laches is an equitable defense to be applied when one party is `guilty of unreasonable and inexcusable delay that has resulted in prejudice' to the other party." 900 F.2d at 1291 (quoting Goodman v. McDonnell Douglas Corp., 606 F.2d 800, *1216 804 (8th Cir.1979), cert. denied, 446 U.S. 913, 100 S.Ct. 1844, 64 L.Ed.2d 267 (1980)).
For essentially the same reasons that the doctrine of equitable estoppel is properly applied in this case, the doctrine of laches applies here as well. There is no question that the State of Nebraska has been guilty of unreasonable and inexcusable delay. The State was specifically put on notice that Defendants had finally selected the Butte site in February, 1990. Moreover, Governor Nelson himself was specifically advised that "community consent" had been achieved. Notwithstanding these clear and unequivocal notices, the State of Nebraska did not bring this suit until after Defendants had authorized the expenditure of 33 million dollars and paid the state approximately 8 million dollars.
Accordingly,
IT IS ORDERED that Defendants' motions for summary judgment (Filings 29 and 30) are granted.

JUDGMENT
Pursuant to the court's Memorandum and Order filed in this matter on this date,
IT IS ORDERED that summary judgment is entered in favor of Defendants, and against Plaintiff, providing that Plaintiff shall take nothing as this action is barred by the applicable limitations period, and by the equitable doctrines of estoppel and laches.
NOTES
[1] The Compact is recorded in volume 2A of the Revised Statutes of the State of Nebraska (Reissue 1989) App. (BB).
[2] The actual memorandum may have been delivered to then governor-elect Nelson on December 10, 1990, following a meeting on December 7. (Ex. 15 Letter of 12/10/90.)
[3] I do not decide the question of the meaning of "community consent."
[4] Whether a limitation period is reasonable, and therefore constitutionally viable, depends on the facts of the particular case. See, e.g., A. Soloff & Son, Inc. v. Asher, 594 F.Supp. 724, 725 (S.D.N.Y.1984) (holding that sixty-day period set forth in Multi-Employer Pension Plan Amendments Act was not unreasonable and did not deny employer due process). Given the need to meet congressionally mandated "milestones" regarding the disposal of low-level radioactive waste, the assertion of a fairly short limitation period against a Compact member state certainly appears to be reasonable. In December, 1985, Congress passed the Low-Level Radioactive Waste Policy Amendments Act of 1985 ("LLRWPAA-1985"), Pub.L. No. 99-240, 99 Stat. 1842 (codified at 42 U.S.C. § 2021b note). Under LLRWPAA-1985, the states were given until January 1, 1993, to find new options for disposal. Interim milestones were set, and penalties for failure to meet those milestones were made part of LLRWPAA-1985. 42 U.S.C. § 2021e(d)(1). Effective January 1, 1986, Congress gave its consent to six regional compacts, including the Central Interstate Low-Level Radioactive Waste Compact. Omnibus Low-Level Radioactive Waste Interstate State Compact Consent Act, Pub.L. No. 99-240, tit. II in part., 99 Stat. 1864 to 99 Stat. 1871 (codified at 42 U.S.C. § 2021d note). Congressional consent was granted subject to the provisions of LLRWPAA-1985 for only as long as the provisions of the Act were followed. Congress further reserved the right to alter, amend or repeal its consent after the expiration of ten years. Thus, there is a particularly pressing need for the prompt resolution of disputes between a member state and a compact commission.
[5] I do not understand the State to argue that the site selection is not final because no license has been issued by the State of Nebraska. Obviously, the State has not taken such a position because to do so would be to admit that its case is not ripe for decision. Sections (c), (d), (e) and (f) of Article V of the Compact provide for an elaborate site-selection process. Once a site has been selected by the Compact Commission, the selection made by the Commission becomes the "regional facility upon the issuance of a license by the licensing authority." Art. V § (f). In this case, the State of Nebraska, through the Nebraska Department of Environmental Quality (formerly known as the Nebraska Department of Environmental Control), is the licensing authority. The State of Nebraska controls when the Butte site becomes "final," not the Compact Commission. Indeed, in Concerned Citizens of Nebraska, Judge Beam recognized that "the Compact Commission designated Nebraska as the host state for the disposal facility and selected Boyd County as the facility's site.... The Boyd County facility cannot begin operating until it receives a license from the NDEC." 970 F.2d at 423 (emphasis added). Thus, there is no question that the selection of the Butte site was a final decision within the meaning of Article IV, Section (1), because there was nothing left for the Commission to do except wait for a license from Nebraska. In fact, Plaintiff argues in its brief that "since the issuance of a license is imminent the threat of harm in construction of the facility without meeting all conditions is also immediate." (Pl.'s Br. at 8.)
[6] There was nothing in the resolution adopted by the Commission that required it to make special findings. (Ex. 2 & attach. B.)