60 F.3d 829
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Shailesh SHAH, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-3566.
 United States Court of Appeals, Sixth Circuit.
 July 6, 1995.
 
 Petition for Review of an Order of the Board of Immigration Appeals, No. Acb-lnu-eex.
 B1A
 PETITION DENIED.
 Before: NORRIS and DAUGHTREY, Circuit Judges, and CHURCHILL, District Judge.*
 PER CURIAM.
 
 
 1
 The petitioner, Shailesh Shah, seeks review of an order of the Board of Immigration mandating his deportation to India. Shah contends that the government should be equitably estopped from requiring his deportation, because of the failure of the American Consul to fulfill certain regulations in the issuance of his visa. Shah also claims that his due process rights were violated when the immigration judge refused to hear evidence concerning the circumstances of his visa application in India. Finding no indication of "affirmative misconduct" on the part of government officials, we decline to invoke estoppel, and we therefore uphold the decision of the Board.
 
 I. FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 The relevant facts in this appeal are not in dispute. Pursuant to the provisions of 8 U.S.C. Sec. 1153(a)(2), Shah sought issuance of an immigrant visa to the United States as an unmarried son of "an alien lawfully admitted for permanent residence." When that visa was issued by an American consul in India, applicable regulations required the consular official to inform Shah that admission to the country on such status would be allowed only if he was "unmarried at the time of application for admission at a U.S. port of entry." 22 C.F.R. Sec. 42.72(d) (emphasis added). In addition to the warning, the consular official is directed by the Department of State's Foreign Affairs Manual to secure the immigrant's signature on form FN 548, acknowledging the fact that the visa is good only if the applicant remains unmarried at the time of entry. That form is supposed to be attached to the immigrant's visa. In this case, it was not.
 
 
 3
 Shah obtained his immigrant visa on June 26, 1989. On August 19, 1989, he married Saraiya Kamini Sureshchandra in India. Six and one-half weeks later, on October 3, 1989, he entered the United States at Detroit on his visa classifying him as the unmarried son of a lawful permanent resident. Eventually, the Immigration and Naturalization Service discovered that Shah had married prior to his entry into this country and deportation proceedings were initiated.
 
 
 4
 At a deportation hearing held on September 10, 1993, the petitioner -- through counsel -- admitted allegations by the INS that he had obtained a visa as the unmarried son of a lawful permanent resident and that he used it to enter the United States on October 8, 1989. He also admitted that he had married just prior to his entry into the United States. However, Shah neither admitted nor denied the allegation of deportability, instead "rais[ing] the argument of estoppel." That defense was based on the fact that counsel's review of his client's "visa package" had turned up no evidence of form FN 548, from which he deduced that "it appears the State Department did not provide the statutory warning to [Shah] advising him not to marry prior to making an entry...." He made no allegation on his client's behalf that Shah had not, in fact, been given the appropriate warnings, nor did he proffer any evidence of misconduct by government officials in the issuance of Shah's visa.
 
 
 5
 The immigration judge ruled that Shah's concession that he was married at the time of his arrival in Detroit established a violation of the conditions of his visa and subjected him to deportation. The judge further ruled that he was without authority to estop the government from proceeding with the deportation efforts.
 
 
 6
 The Board of Immigration Appeals dismissed Shah's resulting appeal after determining that "deportability as charged was established by clear, convincing, and unequivocal evidence." The Board also agreed with the immigration judge "that the doctrine of equitable estoppel is unavailable to the respondent in these proceedings insofar as the immigration judges and this Board do not have the authority to apply the doctrine against the Immigration and Naturalization Service." Consequently, Shah was given 30 days to depart voluntarily from the United States; in the event he did not so depart, the Board ordered that he be deported to India in accordance with the ruling of the immigration judge.
 
 II. ANALYSIS
 
 7
 Neither the immigration judge nor the Board of Immigration Appeals addressed the merits of the petitioner's estoppel defense, ruling that they had no authority to estop the INS on the basis of acts taken by officials of the U.S. Foreign Service. This court, on the other hand, does have apparent authority to invoke the doctrine of equitable estoppel in immigration cases, although we have rarely, if ever, actually exercised that authority.
 
 
 8
 Traditionally, American courts have been hesitant to apply estoppel principles against the United States government for acts of its individual officers and agents. See generally Community Health Services v. Califano, 698 F.2d 615 (3d Cir. 1983), rev'd in Heckler v. Community Health Services, 467 U.S. 51 (1984). Although the Supreme Court has been asked on several occasions to recognize and apply the doctrine, it has repeatedly skirted the issue. See, e.g., Montana v. Kennedy, 366 U.S. 308, 314 (1961) (question of whether "affirmative misconduct" on part of government might estop it from denying citizenship left open); INS v. Hibi, 414 U.S. 5, 8 (1973) (same); INS v. Miranda, 459 U.S. 14, 19 (1982) (same); Heckler v. Community Health Service of Crawford County, Inc., 467 U.S. at 60 ("We have left the issue open in the past, and do so again today."). In Heckler, the Court refused to hold that estoppel could never be successfully asserted against the government, but suggested that "however heavy the burden might be when an estoppel is asserted against the Government, the private party surely cannot prevail without at least demonstrating that the traditional elements of an estoppel are present." Id. at 61.
 
 
 9
 In its most recent pronouncement on this issue, the Supreme Court noted once again that its own opinions "have continued to mention the possibility, in the course of rejecting estoppel arguments, that some type of 'affirmative misconduct' might give rise to estoppel against the government." Office of Personnel Management v. Richmond, 496 U.S. 414, 421 (1990) (emphasis added). The Court also pointed out that similar dicta in prior cases had "spawned numerous claims for equitable estoppel in the lower courts" and that the circuit courts "have taken our statement as an invitation to search for an appropriate case in which to apply estoppel against the Government, [despite the fact that] we have reversed every finding of estoppel we have reviewed." Id. at 422.
 
 
 10
 The Court's observation in Richmond that its estoppel dicta has "taken on something of a life of its own," id., is borne out by a review of the immigration cases decided by the circuit courts. Even without a clear Supreme Court precedent, many of those courts have begun to develop an estoppel jurisprudence in cases involving the allegation of affirmative misconduct on the part of governmental officials. The Sixth Circuit is no exception. We have held, for example, that in addition to establishing the elements of an ordinary claim of estoppel, a party asserting the defense must also prove "affirmative misconduct by a government agent." United States v. Guy, 978 F.2d 934, 937 (6th Cir. 1992). See also, Stone v. INS, 13 F.3d 934, 939 (6th Cir.), aff'd on other grounds, 115 S.Ct. 1537 (1995) ("In general, equitable estoppel may be invoked against the government in deportation proceedings only where the government has been guilty of 'affirmative misconduct."').
 
 
 11
 Measured against this strict standard (and the Supreme Court's growing skepticism), the assertion of estoppel in this case simply cannot succeed. We have nothing before us except the fact that a copy of form FN 548 was not attached to Shah's visa. This constitutes at most a breach of the State Department's internal regulations. It certainly falls short of proof of affirmative misconduct. The petitioner attempts to blame evidentiary deficiencies in the record on the refusal of the immigration judge and the Board of Immigration Appeals to entertain proof of an estoppel. However, at no time has the petitioner proffered even so much as an affidavit detailing the circumstances that he alleges amounted to affirmative misconduct by consular officials, let alone any evidence of reasonable, detrimental reliance on an intentional misrepresentation by those officials.
 
 
 12
 Moreover, we see nothing to be gained by a remand for an evidentiary hearing. The petitioner's legal argument before this court hinges on our acceptance of the Second Circuit's opinion in Corneil-Rodriquez v. INS, 532 F.2d 301, 302 (2d Cir. 1976), in which the court noted the failure of the American Consul in Santo Domingo to warn an immigrant, "as mandated by official State Department regulations[,] that her visa would automatically become invalid if she married before arriving in this country" and held that this omission constituted affirmative misconduct. We elect, however, to follow the Ninth Circuit's lead in Mukherjee v. INS, 793 F.2d 1006 (9th Cir. 1986), in which the court held that mistaken advice offered by an American consul was not affirmative conduct sufficient to justify application of equitable estoppel principles. Id. at 1009.
 
 
 13
 In that case, Mukherjee was told by a vice-consul that he would not be subject to a two-year foreign residency requirement if he entered the United States as an exchange visitor. The vice-consul even checked off a box on the document approving the visa indicating that Mukherjee was not subject to the foreign residency requirement. Id. Unfortunately, as Mukherjee later discovered, the consul's advice was incorrect. When the INS declined to adjust Mukherjee's status, he sought relief in federal court, insisting that the consul's erroneous assurances constituted "affirmative misconduct." Id. The Ninth Circuit concluded that "as a matter of law the government's action in this case falls far short of the affirmative misconduct necessary for estoppel. Nothing in the present case indicates a deliberate lie by the vice-consul or a pattern of false promises." Id. The Court noted that the consular official had made a mistake which "would undoubtedly constitute negligence, but it does not reach the level of misconduct required for estoppel...." Id. See also INS v. Miranda, 459 U.S. 14 (1982) (negligence alone insufficient to estop government).
 
 
 14
 In deciding Mukherjee, the Ninth Circuit specifically questioned the continued viability of Corneil-Rodriquez in light of subsequent pronouncements by the Supreme Court. Certainly, the Court's language in Richmond would suggest that if the case were reviewed today, nearly 20 years after the Second Circuit's original decision, the outcome would be quite different. In addition, we are bound by Sixth Circuit authority, cited above, that would prevent our approval of the Second Circuit's analysis in Corneil-Rodriquez.
 
 
 15
 Accordingly, the petition for review is DENIED.
 
 
 
 *
 The Honorable James P. Churchill, United States District Judge for the Eastern District of Michigan, sitting by designation