Mark D. ASHCRAFT, et al., Plaintiffs,

v.

The SHENANGO FURNACE COMPANY, et al., Defendants.

No. 5:98–CV–2262.

United States District Court, N.D. Ohio, Eastern Division.

June 29, 1999.

Jeffrey L. Nischwitz, Richard John Ambrose, Nischwitz, Pembridge & Chriszt, Cleveland, OH, for Mark D. Ashcraft, Sara Ashcraft, plaintiffs.

Sheila M. Markley, Merle D. Evans, III, Day, Ketterer, Raley, Wright & Rybolt, Canton, OH, for Paxton Corp., Shenango Benefits Trust, Robert Gardner, R. Dixon Hayes, defendants.

Mark A. Rock, Schwarzwald & Rock, Cleveland, OH, Rudolph L. Milasich, Jr., Daniel M. Kovalik, United Steelworkers of America, Office of General Counsel, Pittsburgh, PA, for Local 6968 United Steel Workers of America—AFL—CIO—CLC, defendant.

## OPINION AND ORDER

GWIN, District Judge.

On May 3, 1999, Defendants Paxton Corporation ("Paxton"), Shenango Benefits Trust, Robert Gardner, and R. Dixon Hayes moved for partial summary judgment in this medical benefit rights action. [Doc. 18]. Here, the Court decides if a genuine issue of material fact exists regarding defendants' alleged violation of Plaintiffs Mark D. Ashcraft's and Sara Ashcraft's (collectively, "Plaintiff Ashcraft") rights to health care benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. § 1161 *et seq.*

Because genuine issues of material fact exist regarding plaintiffs' claims under ERISA and the estoppel claim as it relates to ERISA, the Court denies defendants' motion for partial summary judgment on those claims. However, because no evidence shows that Defendant Paxton is a successor in interest to the Shenango Furnace Company, the Court dismisses Paxton from this action. In addition, because plaintiff fails to show defendants intended that he rely on a misrepresentation, the plaintiff's claim for estoppel as it relates to COBRA coverage fails.

## I. STANDARD OF REVIEW

Fed.R.Civ.P. 56(c) states the procedure for granting summary judgment and says in pertinent part:

[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In considering a motion for summary judgment, the court must view the facts and all inferences to be drawn from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987); *SEC v. Blavin*, 760 F.2d 706, 710 (6th Cir.1985). The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *60 Ivy Street Corp.*, 822 F.2d at 1435.

Essentially factual disputes about matters essential to adjudication preclude the Court from granting summary judgment. *See id.* But not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts that, under the substantive law governing the issue, might affect the outcome of the suit.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The factual dispute must also be genuine. The facts must be such that if they proved them at trial a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505. The disputed issue does not have to be resolved conclusively in favor of the nonmoving party, but that party is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial. *60 Ivy Street,* 822 F.2d at 1435 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Thus, the judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue a proper jury question. The Court should not judge the evidence and make findings of fact. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *60 Ivy Street,* 822 F.2d at 1436 (quoting *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505).

The Court now reviews the facts with these standards in mind.

## II. FACTUAL BACKGROUND

Plaintiff Ashcraft claims violation of ERISA and COBRA rights. Ashcraft claims, *inter alia,* that defendants failed to produce requested documents. Ashcraft also seeks to prevent defendants from ending his medical coverage in 1998. In making this claim, Ashcraft argues a Summary Plan Description ("SPD") from 1989 says that Shenango Benefits Trust would provide hospitalization coverage at no cost until he reached 65 and make available major medical coverage, to be paid by Ashcraft.

On September 4, 1970, Shenango Furnace Company ("Shenango") hired Mark Ashcraft. He worked as a core maker in Shenango's Centrifugal Castings Division for seventeen years. While employed by Shenango, Shenango enrolled Ashcraft in Shenango's medical plan. That plan covered him, his wife, Plaintiff Sara Ashcraft, and his twin daughters, Shelly and Susan Ashcraft.

In September 1985, Ashcraft stopped working at Shenango due to irregular heartbeat, shortness of breath, and dizziness. Doctors diagnosed him as having Mitral Valve prolapse, anxiety depression, neurocirculatory asthenia, ventricular asymmetry, irregular heartbeats, and nervousness. Because of these conditions, Shenango put him on sick and accident leave. He received benefits under that policy.

Due to Ashcraft's disability, he and his family became eligible for Shenango's retiree medical plan called the "Program of Hospital–Medical Benefits for Eligible Pensioners of the Shenango Furnace Company" (the "Retiree Medical Plan").

The Retiree Medical Plan provided basic hospitalization coverage to age 65, fully paid for by Shenango. In addition, retirees could choose optional major medical coverage until age 65. This optional medical coverage required payment by the retirees at a lesser "group rate" premium.[1]

In February 1986, Ashcraft became eligible for disability benefits under a pension agreement between the furnace company and the United Steelworkers of America Local Union No. 6968—AFL—CIO. Ashcraft also received disability payments from the Social Security Admin-

---

**1.** The Retiree Medical Plan differed from the employee medical plan that previously covered Ashcraft and his family because it re-

quired him to make premium contributions for optional major medical coverage.

istration from March 1986. Around this time, he also received pension payments from the Shenango Pension Plan. From these pension payments, the pension plan deducted the cost of the optional major medical coverage provided by the Retiree Medical Plan.

On July 17, 1989, Ashcraft received a summary plan description ("SPD") for the Retiree Medical Plan.[2] The SPD states that Shenango pays for "Basic" retiree coverage until the retiree reaches the age of 65. In addition, Shenango also provided "Major Medical" coverage under this plan with the retiree to pay the cost of this coverage until age 65.[3] Shenango did not reserve the right to modify or end benefits. Nor did the SPD describe any procedure to amend the Retiree Medical Plan.

In 1989, Shenango shut down its operations in Dover, Ohio, after it failed to negotiate a new collective bargaining agreement with the union.

In 1991, Shenango established The Shenango Furnace Company Retiree Benefit Trust ("the trust") to manage and administer Shenango's benefit assets and obligations to its retirees and other groups of active employees.

On June 23, 1996, Shenango's Board of Directors dissolved the company. The board also renamed the trust "Shenango Benefits Trust" and authorized the assignment of all of Shenango's Welfare Benefit Plans to the newly-named trust. Shenango funded the trust with $100,000. Later, Shenango merged the once-separate Retiree Medical Plan into the Shenango Furnace Company Employee Benefits Plan. The trust then administered both.

In 1996, doctors diagnosed Ashcraft's daughter, Susan, as having Hodgkins disease. On or around January 27, 1997, the Shenango Benefits Trust raised Ashcraft premium payments for supplemental major medical benefits. This increase may be related to claims associated with the treatment of his daughter's cancer. The Shenango Benefits Trust raised monthly premiums to $500.00.

Here, Ashcraft says that Shenango agreed and represented that he would receive hospitalization coverage as a "paid up" benefit of the Retiree Medical Plan. While acknowledging an obligation to pay major medical premiums, Ashcraft says the Shenango Benefits Trust wrongly charged a premium for hospitalization coverage, a coverage he says was a "paid up" benefit.[4]

On or about April 24, 1998, Ashcraft received a letter from the Shenango Trust advising him that the Trust was canceling his benefits under the Retiree Medical Plan, effective June 30, 1998, and that the Trust would seek alternative coverage.

In June 1998, CoreSource, Shenango Benefits Trust's administrator, informed Ashcraft he could elect COBRA continuation coverage for him and his family through July 1, 1999, at a monthly cost of $332.44. Because this June 1998 notification had told Ashcraft that the Trust would cancel his insurance, he applied for the COBRA coverage and made a payment on June 25, 1998. On or around July 9, 1998, CoreSource sent Ashcraft a letter confirming his COBRA enrollment.

After CoreSource confirmed Ashcraft's COBRA enrollment, Shenango Benefits

---

**2.** George W. Henley, Jr., Shenango's Manager of Industrial Relations, sent the plan description.

**3.** As a Shenango retiree, Ashcraft was also entitled to medical insurance after age 65 through a policy Shenango had purchased with Prudential.

**4.** Ashcraft says that the Shenango Benefits Trust told its trust administrator to combine

the "Base Medical Expense Benefits" and "Optional Major Medical Expense Benefits" for certain retirees. Ashcraft claims the Shenango Trust sought to charge retirees for both the hospitalization and the major medical coverage. Ashcraft says this was a deliberate plan to see if the Shenango Benefits Trust could shift the cost of retiree hospitalization to retirees and "see if they object."

Trust sought to revoke Ashcraft's COBRA participation. Explaining its later denial of COBRA benefits, the Shenango Benefits Trust says its administrator mistakenly offered Ashcraft continuation coverage for which he was not eligible. The trust then reinstated medical coverage to Ashcraft, but only through September 1998.

Ashcraft subsequently purchased private insurance, which did not cover his daughter's medical needs due to its status as a pre-existing condition.

On October 2, 1998, Plaintiff Ashcraft filed the present action. Ashcraft contends defendants breached their contract to provide health care, and that the Furnace Company, Shenango Benefits Trust, Gardner, and Hayes breached their fiduciary duties. The plaintiff also seeks declaratory judgment reflecting his rights to health care. The Shenango Benefits Trust does not challenge these claims in the motion before the Court.[5] Instead, the defendants seek judgment as to three claims arising under ERISA, one claim arising under COBRA, and a claim seeking judgment finding that defendants are estopped from denying health care benefits to plaintiff.

### III. ANALYSIS

Defendants Paxton, Shenango Benefits Trust, Gardner, and Hayes seek summary judgment on several claims: Counts VI (estoppel); VII, VIII, and IX (ERISA); and X (notice under COBRA). Defendants also seek the dismissal of all claims against Defendant Paxton.

The Court finds no evidence supports plaintiffs claims against Defendant Paxton. The Court also gives defendants judgment on plaintiffs claims that they did not provide him notice under COBRA (Count X) and the portion of Count VI relating to COBRA. The Court otherwise denies defendants' motion.

The Court now addresses each issue in turn.

### A. Paxton as a Defendant

▆ Defendants seek summary judgment on all claims made against Defendant Paxton. The defendants say Paxton is not liable on any of the claims because it is not a successor to the Shenango Furnace Company. Because Plaintiff Ashcraft fails to show any evidence that Paxton succeeded to the furnace company's interest, the Court gives defendant Paxton judgment as to all claims.

In 1989, the Shenango Furnace Company closed its Dover, Ohio, facility and moved its production to a plant in Terre Haute, Indiana. The Shenango Furnace Company later dissolved. The plaintiffs show no evidence that Paxton Corporation assumed the Terre Haute plant or other property or rights of Shenango.

In support of its claims against Paxton, Plaintiff Ashcraft points to a 1996 resolution of the Shenango Furnace Company's Board of Directors. That resolution says:

RESOLVED, that the Corporation be, and it hereby is, permitted to:

(a) continue to maintain and administer any or all of the Welfare Benefit Plans within the Corporation;

(b) transfer and assign any or all of the Welfare Benefit Plans to a trust which is to be known as the "Shenango Benefits Trust" (the "Trust") and that One Hundred Thousand Dollars ($100,000.00) be transferred from the Corporation's major medical reserve account to fund the Trust; and

(c) transfer and assign any or all of the Welfare Benefits Plans to Paxton Corporation, a New Jersey Corporation.

RESOLVED, that the officers of the Corporation be, and hereby are, authorized and directed to execute and deliver

---

**5.** Plaintiff also brought three other claims which are no longer before the Court. Plaintiff dismissed Claim V (breach of the duty of fair representation). Upon receiving the sum- mary judgment motion, Plaintiff Ashcraft also withdrew from consideration Claims II (breach of contract) and III (breach of collective bargaining agreement).

such documents and to take such actions as may be necessary to effectuate the foregoing resolutions.

This resolution was approved by the company's shareholders.

Ashcraft says this language shows that Paxton succeeded to the furnace company's interest. This argument is unpersuasive.

The board's action authorized assignment to Paxton, but did not direct the corporation to do so. There is no evidence in the record that Shenango Furnace Company assigned any interest to Paxton. In contrast, defendants show that the company assigned its welfare benefit plans to Shenango Benefits Trust, an entity separate from Paxton.

Finding no evidence to support plaintiffs' clams against Paxton, the Court gives Paxton judgment dismissing it from this action.

### B. ERISA Claims

Defendants seek summary judgment on three claims arising under ERISA. As to these ERISA claims, plaintiffs say defendants failed to maintain plan documents (Count VII); failed to supply requested information (Count VIII); and failed to comply with obligations described in the 1989 Summary Plan Descriptions (Count IX). Because material issues exist and defendants fail to show right to judgment as a matter of law, the Court denies defendants' motion on all three counts. The Court addresses each count, below.

### 1. Failure to Maintain ERISA Documents

Plaintiff Ashcraft alleges that defendants failed to maintain documents as required by ERISA. Although Ashcraft's argument fails on one point, genuine issues remain for trial.

Ashcraft first alleges defendants failed to produce the retiree plan in effect at the time of his retirement. Ashcraft argues that failure to produce plan documents requires conclusion that the defendant trust has failed to maintain the document. Even if this were true, it is not grounds for Ashcraft's claim.

■ ERISA requires plan sponsors maintain records of plan documents and SPDs. 29 U.S.C. § 1027. However, a plan sponsor need retain plan records only for six years from the filing of the annual report. Because Ashcraft retired in the mid–1980s, ERISA obliged defendants to retain the plan in effect at the time only until the early 1990s. Thus, any failure to produce that plan is of no moment.[6]

■ Plaintiff Ashcraft next argues that in 1997, the Shenango Benefits Trust did not notify Ashcraft that they had excluded his basic hospitalization coverage—previously paid for by his employer—from the plan and that he must pay for it.

ERISA requires that a plan provide a summary description of material reductions in services or benefits within 60 days after the modification.[7] 29 U.S.C. § 1022(a), 1024(b)(1).

Defendants do not address plaintiffs' argument that they did not give him notice of changes requiring him to pay for hospitalization insurance. Also, defendants do not show evidence that they gave notice of the merger of the Retiree Benefits Plan into the trust's plan. Instead, Defendants address only the issue of whether they properly notified Ashcraft about the termination of the plan in 1998.

---

6. *But see* Part III.D, *infra,* explaining that defendants' failure to produce a plan from 1989 creates a genuine issue of material fact whether the plan reserved the right to modify or terminate the plan at any time, precluding a grant of summary judgment on the ERISA estoppel issue.

7. Although Plaintiff Ashcraft has dubbed Count VII "failure to maintain documents," implying a violation of 29 U.S.C. § 1027, the crux of the claim is failure to notify, in violation of §§ 1022 and 1024.

Material factual issues exist as to this issue. Defendants fail to show their right to judgment as a matter of law. The Court denies the motion for summary judgment on Count VII.

### 2. Failure to Supply Requested Information

■ Plaintiff Ashcraft claims that, from April 1997 to the present, defendants failed to provide information upon request, as required under ERISA. ERISA provides that a plan participant or beneficiary may request documents concerning plan administration. If a plan participant has requested information, the Plan Administrator must supply the information within 30 days. 29 U.S.C. § 1024(b)(4); 29 U.S.C. § 1132(c)(1).

Defendants respond and say Plaintiff Ashcraft did not provide a written request until September 8, 1998. While Plaintiff Ashcraft says he received response letters near September 25, 1998, he says he received no documents until October 23, 1998. Defendants say they furnished documents the first week of October, within the 30–day limit.

The disputed date is material to whether a violation of the statute occurred. Because material factual issues exist as to the date documents were provided, the Court finds a genuine issue exists for trial on this matter and denies defendants' motion on Count VIII.[8]

### 3. Failure to Comply with SPD Requirements

■ In Count IX, Plaintiff Ashcraft says Defendants Gardner and Hayes failed to give Ashcraft summary plan descriptions and annual reports, as required by 29 U.S.C. § 1022.

ERISA requires that an administrator furnish an updated summary plan description to each participant and each beneficiary receiving benefits under the plan, every fifth year. If no amendments have been made to a plan during such five-year period, the administrator must give each participant a summary plan description every ten years. 29 U.S.C. § 1024(b)(1).

The last summary plan description for the medical plan is dated 1995. Another is not due until 2000. If material changes occur between issuance of summary plan descriptions, the plan must inform participants of material modifications within 60 days of the change. *Id.*; 29 U.S.C. § 1022(a). The summary plan descriptions and summaries of material modifications "shall be written in a manner calculated to be understood by the average plan participant." *Id.*

Ashcraft gives evidence that defendants did not give him summary plan descriptions and generally did not provide comprehensible information. Defendants say they regularly informed Ashcraft of changes in the premiums and benefits. However, defendants offer no evidence of letters or similar communications, except the 1998 letter terminating benefits. The Court finds material factual issue. The Court denies defendants request for judgment as a matter of law as to Count IX.

### C. COBRA Claim

In Claim X of the complaint, Plaintiff Ashcraft says Defendant Shenango Furnace Company or Shenango Benefits Trust failed to notify him of his rights consistent with COBRA. Nevertheless, because Ashcraft was not eligible for COBRA, failure to notify him of his rights caused no dam-

---

**8.** Ashcraft says he has still not received documents relating to Summary Plan Descriptions or plan documents in effect prior to 1991. However, as noted earlier, the defendant trust was obliged to keep records only for six years. The Court does not see, and plaintiff does not address, how defendants may be held liable for failing to produce information they were not required to keep. In addition, ERISA requires only that the plan administrator produce the most recent version of the summary plan description, plan document, or "other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). Thus, failure to provide pre–1991 SPDs or plan descriptions cannot serve as a basis for a violation of the statute.

ages. The Court therefore grants defendants' motion on Count X.

Ashcraft first claims the company failed to initially notify him of his rights to continuation coverage under COBRA. Coverage under the plan commenced in 1986. The Shenango Furnace Company was the Retiree Medical Plan's sponsor and administrator at the time. In 1991, the company created a separate trust to administer the plan. In 1996, the company dissolved.

Ashcraft claims Defendant Paxton is a successor to the furnace company and, as such, continues to be responsible for the company's failure to notify. As explained earlier in this opinion, no evidence shows that Paxton is a successor to the furnace company. The plaintiff also repeatedly calls Shenango Benefits Trust an assignee (along with Paxton) of the furnace company's obligations under the Retiree Medical plan.

The group health plan administrator has a duty to notify the qualified beneficiaries of their right to extend coverage under COBRA at the commencement of the beneficiary's coverage under the plan. 29 U.S.C. § 1166(a)(1). In 1986, the Shenango Furnace Company was the plan sponsor and administrator.

Defendant Shenango Benefit Trust argues that because the trust did not exist until 1991, well after initial notice was required, the trust cannot be liable for the employer's failure to notify Ashcraft several years earlier.

■ Plaintiff Ashcraft does not address this issue in his response. Upon review, the Court is unable to identify any damages suffered by Plaintiff Ashcraft for any alleged failure to notify. As explained below, Ashcraft never had statutory rights to continuation coverage because no qualifying event occurred. Therefore, failure to notify him in 1986 of COBRA rights that never became effective did not harm plaintiffs.

Under COBRA, a qualified beneficiary may extend the period of health insurance coverage from the date of a "qualifying event" until at least 18 months from that date. 29 U.S.C. § 1162(2)(A)(i). The sponsor may require the qualified beneficiary to pay a premium for the extended coverage. 29 U.S.C. § 1162(3).

COBRA defines "qualifying events" to include a reduction in hours or end of employment and a determination that a covered employee is entitled to disability payments under Title XVIII of the Social Security Act.[9] *See* 29 U.S.C. 1163.

COBRA requires a plan administrator to notify "any qualified beneficiary" of his or her right to continue health insurance coverage for up to eighteen months after a qualifying event. *See* 29 U.S.C. § 1166(a)(4) (notice requirement); 29 U.S.C. § 1162 (continuation coverage). An employer must notify a benefit plan administrator of a qualifying event triggering COBRA coverage within 30 days of its occurrence. 29 U.S.C. § 1166(a)(2). In turn, the plan administrator must inform the covered employee of his rights under COBRA. 29 U.S.C. § 1166(a)(4).

■ "Providing appropriate notice is a key requirement under COBRA.... If the administrator fails to provide that notice [of the triggering of COBRA rights] to the qualified beneficiary, it may be bound to provide coverage to her." *McDowell v. Krawchison,* 125 F.3d 954, 957 (6th Cir. 1997) (citing *Lincoln Gen. Hosp. v. Blue Cross/Blue Shield,* 963 F.2d 1136, 1139 (8th Cir.1992)).

Plaintiff Ashcraft claims Shenango did not inform him of his rights within 30 days

---

**9.** The qualified beneficiary may extend coverage for an additional period of 11 months for a total of 29 months from the termination of employment, if the qualified beneficiary provides notice within the initial 18 months of extended coverage that he or she was found to have been disabled under Title II or XVI of the Social Security Act. 29 U.S.C. § 1162(2)(A). This disability must have been present at the time of or within 60 days of the qualifying event such as the termination of employment 29 U.S.C. § 1162(2)(A).

of a "qualifying event" as required in the statute. Plaintiff Ashcraft also claims that Defendant Shenango Furnace Company failed to provide the plan's administrator with timely notice of a "qualifying event." Ashcraft does not specify the event triggering the notice requirement, but the record reveals only two possibilities: in 1985 when he retired and in 1998 when the trust informed him it was canceling his coverage. As explained below, the Court finds no genuine issue for trial as to either event and grants defendants' motion on this issue.

Plaintiff Ashcraft left employment due to disability in late 1985 or early 1986. He became eligible for Social Security disability payments in March 1986. Thus, any possible "qualifying event" occurred more than twelve years ago. Ashcraft remained covered by his employer's retiree benefit plan through June 30, 1998. Having received medical benefits for at least ten years after being found disabled, Plaintiff Ashcraft shows no evidence of damages from any failure in 1986 to notify him of COBRA rights.

Because Ashcraft received continued coverage by the benefit plan, any claim under COBRA at the time of any qualifying event in late 1985 or early 1986 is moot. COBRA defines a "qualifying event" as an event that, "but for the continuation coverage required under [COBRA], would result in the loss of coverage of a qualified beneficiary." 29 U.S.C. § 1163. Because Ashcraft did not lose coverage when he retired, no qualifying event occurred to trigger Ashcraft's COBRA rights.

Regarding cancellation of his benefits in 1998, there is similarly no genuine issue because no qualifying event occurred to trigger COBRA's coverage.

In April 1998, Shenango Benefits Trust informed Ashcraft it would end the Retiree Medical plan, effective June 30, 1998. Around that same time, CoreSource, which administrated the trust's benefits program, informed Ashcraft he could receive continuation coverage under COBRA. Coverage would extend from July 1, 1998, through July 1, 1999. Ashcraft would pay the monthly premium of $332.44. In August 1998, Shenango Benefits Trust negated CoreSource's action and advised Ashcraft that the trust reinstated his coverage under the Retiree Medical plan but only through September 20, 1998.

The 1998 termination of benefits is not a "qualifying event" under COBRA. Because Ashcraft never had a statutory right to COBRA benefits, any failure to notify him at the commencement of his coverage under the Retiree Medical Plan is moot and caused no damages.

Therefore, the Court grants defendants' motion for summary judgment as it relates to the failure to notify.

## D. Estoppel

In Count VI, Plaintiff Ashcraft says defendants are estopped from denying health care coverage. In support of this claim, Plaintiff Ashcraft argues that the 1989 Summary Plan Description said he would receive certain healthcare coverage until age of 65. Plaintiff Ashcraft also argues that the defendants' agent represented that the COBRA continuation plan would extend through July 1, 1999.

As explained below, the Court finds a genuine issue regarding estoppel under ERISA, but none under COBRA. Therefore, the Court grants defendants' motion on Count VI as it relates to COBRA and denies the motion as it relates to ERISA.

Equitable estoppel may be a viable theory in ERISA cases. *Sprague v. General Motors Corp.*, 133 F.3d 388, 403 and n. 13 (6th Cir.1998). "Principles of estoppel, however, cannot be applied to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions." *Id.* at 404. In other words, if a summary description conflicts with terms of a plan, the summary description prevails. *Id.* at 400 (explaining that "statements in a sum-

mary plan are binding and if such statements conflict with those in the plan itself, the summary shall govern") (citing *Edwards v. State Farm Mut. Auto. Ins. Co.*, 851 F.2d 134, 136 (6th Cir.1988)). Yet if the summary plan is silent on an issue and the plan addresses it, the plan prevails. *Id.* at 401 (stating "the principle announced in *Edwards* does not apply to silence").

■ In the instant case, the 1989 Summary Plan Description contains no reservation of the right to modify or end the plan. There is no 1989 plan on record, and no clear indication that later plans provided by defendants correspond to the 1989 Summary Plan Description. Thus the Court is unable to assess whether the plan documents are ambiguous.

Defendants argue that because ERISA did not require them to maintain documents before six years ago, the Court should allow them to prevail on summary judgment despite failing to produce the 1989 plan. The Court disagrees. As explained earlier in this opinion, defendants may have had no statutory obligation to retain the 1989 plan, but without it the Court cannot decide the estoppel issue. Further, Plaintiff Ashcraft raises a question whether the trust, through its representatives, failed to inform him in 1997 that they were including his hospitalization costs with his premium for optional coverage, a change in the Retiree Medical Plan. Defendants do not address this issue.

Therefore, the Court denies defendants' motion for summary judgment on estoppel as it applies to ERISA.

■ Regarding estoppel under CO-BRA, defendants argue that CoreSource made any misrepresentations about Ashcraft's eligibility for coverage, not defendants. Ashcraft asserts Gardner told him over the phone that the trust withdrew its offer of COBRA coverage. Defendants acknowledge that they negated COBRA coverage "when the Benefits Trust learned of CoreSource's action." Thus, an issue ex-

ists regarding the extent of defendants' involvement in representing to Ashcraft that they covered him.

Nonetheless, Plaintiff Ashcraft fails to show that defendants intended that Ashcraft rely on a misrepresentation of coverage. *See Sprague*, 133 F.3d at 403 (stating an element of equitable estoppel is that "the party to be estopped must intend that the representation be acted on, or the party asserting that the estoppel must reasonably believe that the party to be estopped so intends").

Ashcraft received a letter from Core-Source extending continuation coverage to him in June 1998. He made his first payment on June 25, 1998. He then received a letter on July 1, 1998, stating it enrolled his family under COBRA through July 1, 1999, if he paid premium payments on time. On August 1, Ashcraft learned that the trust had withdrawn COBRA coverage. The trust then reinstated Ashcraft's medical coverage under the trust's plan through September 20, 1998.

Plaintiff Ashcraft offers no evidence that defendants' actions were anything other than a mistake, and one that they rectified soon after its discovery. The defendant trust even extended plan benefits to the plaintiff for two extra months after negating the COBRA action.

■ A mistake may show negligence, but does not reach to "affirmative misconduct" required for estoppel. *Shah v. Immigration and Naturalization Service*, 60 F.3d 829 (TABLE), 1995 WL 399071, *4 (6th Cir.1995); *see also Wille v. City of Moraine*, 1996 WL 1061506, *28 (S.D.Ohio 1996) (stating "mistake does not provide a basis for the application of equitable estoppel"). Plaintiff's estoppel claim must fail as it relates to COBRA.

### IV.   CONCLUSION

For the reasons explained herein, the Court dismisses Defendant Paxton from this action. The Court also finds no genuine issue of material fact regarding notice

under COBRA (Count X) or estoppel under COBRA (Count VI). The Court denies defendants' motion on Counts VII, VIII, and IX, and the portion of Count VI as it relates to ERISA.

IT IS SO ORDERED.